INDEPENDENT OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67700.   Promulgated November 5, 1936.

*S. Leo Ruslander, Esq.*, and *R. J. Cleary, Esq.*, for the petitioner. *Dean P. Kimball, Esq.*, for the respondent.

36

OPINION.

ARUNDELL: Summarizing the facts, they are that in 1930 the petitioner transferred assets to a newly organized corporation for all of its stock, and then exchanged 75 percent of the stock so acquired for stock of Vacuum plus a so-called obligation of Vacuum. On the first exchange the petitioner also received income certificates of the new corporation, but the parties appear to be agreed that these were without value.

In his original determination in this proceeding the respondent held that the transfer by petitioner of 26,250 shares of stock of the new corporation to Vacuum was a sale resulting in taxable gain; he did not compute any gain on petitioner's exchange of assets for stock of the new corporation. By amended answer the respondent claims that petitioner realized a greater gain than originally determined. He alleges primarily that petitioner sold or exchanged less than substantially all of its assets for a mixed consideration consisting of 8,750 shares of stock of the new corporation, 14,192 shares of Vacuum stock, a $1,312,500 obligation of Vacuum, and certain income certificates of the new corporation. In the alternative, the

respondent alleges that the exchange of assets by petitioner for stock and income certificates of the new corporation was a taxable transaction.

The question for decision is whether or not the transfers and exchanges described in the findings of fact resulted in recognizable gain to the petitioner. Counsel for the petitioner, analyzing each step, contends that each was a nontaxable exchange. Counsel for the respondent maintains that what was done must be viewed as a single transaction, the substance of which was the transfer by the petitioner of only a part of its assets for 25 percent of stock of the new company plus stock and an obligation of Vacuum. Counsel for the respondent contends in the alternative that, if each step be separately considered, then taxable gain resulted because the petitioner transferred less than "substantially all" of its assets.

The parties cite cases supporting both the single transaction and the separate step theories. The very number of cases on each side demonstrates that neither theory has universal application. It may well be that a completed series of transactions has all the outward appearance of a nontaxable reorganization and yet some of the separate steps may be such as to give rise to gain or loss. On the other hand, each separate step may fit exactly into the words of the statute and yet the completed undertaking may fall outside the statute. Cf. *Gregory* v. *Helvering*, 293 U. S. 465. It is not possible to say that either theory should be exclusively applied to the varying situations that arise in the many exchange and reorganization cases that are presented to us. In this case it is unnecessary to say which should be applied, for it is our opinion that either approach to the question produces the same result, namely, that the transactions gave rise to no taxable gain to the petitioner.

Viewing the transactions as the respondent primarily contends should be done, i. e., as an accomplished result and the several steps merely as parts of the whole, and considering the result first from the standpoint of the petitioner, we find that at the outset petitioner owned property used in its oil distribution business; at the conclusion of the transactions, in place of direct ownership it had a 25 percent interest through stock ownership in the transferee plus the interest represented by the income certificates, and also a further substantial interest through its stock interest in Vacuum, which owned the other 75 percent of the transferee's stock. While the petitioner's relationship to the assets was substantially changed, nevertheless it acquired and held a definite and substantial interest in the transferee. Cf. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Nelson Co.* v. *Helvering*, 296 U. S. 374.

Still viewing the transactions as a whole, but from the standpoint of Vacuum's participation, we find that what occurred was that Vacuum acquired 75 percent of all the stock of the new corporation. This acquisition was not accomplished by purchase, but by the issue of Vacuum stock to the petitioner. This acquisition contains all the elements of the definition of reorganization in section 112 (i) (1) (A) of the Revenue Act of 1928, as an "acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation." Under the definition in section 112 (i) (2) both Vacuum and the new company were parties to the reorganization. Moreover, it is plain, we think, that the petitioner was a party to the reorganization. Its assets and its participation were necessary parts in the carrying out of the plan of reorganization. See *Fifth Avenue Bank of New York, Executor*, 31 B. T. A. 945; affd., 84 Fed. (2d) 787.

Considering the several steps separately, the first taken was the exchange by petitioner of part of its assets for all of the stock of the new corporation. The respondent's argument that the petitioner transferred less than substantially all of its properties applies only upon an attempt to fit this step into the last clause of section 112 (i) (1) (A) defining a reorganization as the "acquisition by one corporation of substantially all of the properties of another corporation." We have not found as a fact whether or not the assets transferred constituted substantially all the properties of the petitioner, and we think it unnecessary to do so, for in our view the transaction fits equally well into other parts of the definition section of the statute. It perhaps does not come within that part of paragraph (A) which defines reorganization as including the acquisition by one corporation of a majority of the stock of another. That part of the definition has been held to be limited to cases where the corporation acquiring the stock of another continues in existence. *David Gross*, 34 B. T. A. 395, 400. It does, however, come within paragraph (B), which treats of the "transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred." Reaching this point, we meet the objection of the respondent that under the plan of reorganization the petitioner was not to remain in control of the new corporation and that, under the cases viewing a series of transactions as only parts of the whole, we must say that there was no statutory control under paragraph (B) by the petitioner immediately after the exchange. But the assertion of this view is directly opposed to that of each step being a separate transaction. The application of the cases cited by respondent denies the very prem-

ise on which the argument is based, namely, that as a matter of law the steps can be separately considered. The attempt to separate the steps and then to argue that the effect of each can not be separately judged confuses the two concepts with which the respondent starts his reasoning. If each step is separate, then the fact that each was pursuant to a plan is immaterial on this point. The existence of a plan may be highly material under other provisions of the statute, but the definition section which we are now considering does not mention it.

Under the separate step theory, the first transaction, namely, that between the petitioner and the new corporation, would come within either subsection (4) or (5) of section 112 (b). Subsection (4) exempts from tax the gain on a transfer of property by one corporation a party to a reorganization to another corporate party solely for stock or securities of the other, and subsection (5) grants exemption on a transfer of property to a corporation for stock or securities where immediately after the exchange the transferor is in control of the transferee corporation. Under subsection (5) the transfer need not be pursuant to a plan of reorganization in order to be exempt from tax.

Still considering the steps separately, the second one was the exchange by petitioner of 75 percent of the stock of the new corporation for stock of Vacuum. Section 112 (b) (3) provides for the nonrecognition of gain or loss on the exchange of stock or securities in a corporate party to a reorganization for stock or securities in another corporate party. Section 112 (b) (4) similarly provides for nonrecognition where a corporate party to a reorganization exchanges property for stock or securities in another corporate party. Whether we regard the stock of the new company in the hands of the petitioner as "stock" or as "property", its exchange by the petitioner for Vacuum stock would be nontaxable under one or the other of these provisions. In *Ballwood Co.* v. *Commissioner*, 84 Fed. (2d) 733, there was a similar triangular transaction and the court held broadly that it came under both subsections (3) and (4). Under whichever provision it comes, it is nontaxable if the petitioner received only stock or securities of Vacuum.

The respondent contends that the petitioner received not only stock of Vacuum, but also the obligation of Vacuum to pay $1,312,500, and that because of the receipt of this obligation the transaction does not come within either subsection (3) or (4) of section 112 (b). We do not agree with this view of the respondent. The substance of the agreement between the parties was that the petitioner was to get stock of Vacuum and that was what it actually received. It received a total of 22,978 shares, of which it placed in escrow 8,786 shares to

be later sold. There seems to be no dispute as to the petitioner's actually receiving 14,192 shares of Vacuum stock. The contract with respect to this stock provides that "$1,312,500 * * * shall be delivered the present company [petitioner] in stock of Vacuum * * *." On the basis of the agreed price per share this stock amounted to 14,192 shares. The next provision of the contract is that "$812,-500 * * * in stock of Vacuum Oil Company shall on the date of closing be endorsed in blank and placed in escrow * * *." The number of shares necessary to meet this provision was 8,786. The respondent adds together the $812,500 just mentioned and the $500,-000 designated in the contract as the "unpaid balance" and treats the sum, $1,312,500, as an obligation of Vacuum received by petitioner in addition to the Vacuum stock. In this we think there was error. First, the $812,500 was not a money obligation. It was payable and was paid in stock of Vacuum. The evidence is that 8,786 shares were delivered to petitioner and by it endorsed and placed in escrow to be sold. The petitioner according to the agreement was to receive the dividends on the stock while held in escrow and was to receive and did receive the proceeds of sales of the stock. Second, the so-called "unpaid balance" of $500,000 was not an obligation of Vacuum susceptible of treatment as "property." It was not an obligation on the part of Vacuum to pay any definite or ascertainable amount. It was in substance only a guaranty that the petitioner would realize a certain amount on the sale of the escrowed stock. Not until the stock was sold could it be determined whether or not Vacuum would be liable for any sum at all, and this possibly might not occur for five years after the taxable year. Vacuum had no liability under this part of the contract in the taxable year, and there is no showing that any liability ever did arise. But even if the guaranty can be considered to be property, its wholly contingent nature renders it without value, and there is no measure for a tax under section 112 (c) (1), which bases the tax on the value of "other property" acquired in an exchange. These conclusions are based on our construction of the contract. The petitioner presented valuation evidence, but that was based on the assumption of the guaranty being a direct obligation to pay, and was offered only as an alternative to the conclusions we have reached.

We accordingly hold that none of the transfers and exchanges here involved gave rise to recognizable gain to the petitioner. Minor adjustments made by the respondent in the income reported are not in issue.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Turner dissents.