**COMMISSIONER OF INTERNAL REVENUE v. FIRST NAT. BANK OF ALTOONA, PA., et al., and eight other cases.**
**Nos. 6622, 6614–6621.**

Circuit Court of Appeals, Third Circuit.
June 17, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Lee A. Jackson, Sp. Assts. to Atty. Gen., for petitioner.

S. Leo Ruslander of Pittsburgh, Pa. (Isaiah Scheeline, of Altoona, Pa., and Samuel Kaufman, of Pittsburgh, Pa., of counsel), for respondents.

Before DAVIS and BUFFINGTON, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

The basic issue, upon which depends to a large extent the decision in all of the cases here involved, is whether or not the Independent Oil Company (hereinafter called the old company), respondent in Appeal No. 6614, realized a taxable gain as a result of certain transactions which took place in the year 1930.

In that year, in accordance with the terms of a contract previously entered into, the old company transferred approximately 86% of its assets to a newly formed corporation, the Independent Oil Company, Inc. (hereinafter called the new company), in exchange for all of the stock of the latter. Thereafter, the old company transferred 75% of the stock of the new company, and gave an option on the remaining 25%, to the Vacuum Oil Company (hereinafter called Vacuum) in ex-

change for 22,978 shares of stock of Vacuum, 8,786 of which were placed in escrow subject to a guaranty or "obligation" of Vacuum that these shares would sell for at least $1,312,500 within five years, though their value at that time was only $812,500.

The old company was thereupon dissolved and its assets were distributed to its stockholders, respondents in Appeals Nos. 6615 to 6622, inclusive, as follows: The First National Bank of Altoona and the Benjamin Cohn Trust No. 10 (hereinafter called the Bank), respondent in appeal No. 6622, received the 8,786 shares of Vacuum stock in escrow together with the "obligation"; the other stockholders, respondents in appeals Nos. 6615 to 6621, inclusive, received, in proportion to their stock holdings in the old company, its remaining assets including the 14,192 shares of Vacuum stock and the 25% stock interest in the new company subject, of course, to the option in Vacuum to purchase it.

It appears from the record that the above transactions resulted in a gain or profit to the old company. The respondents contend that this gain was not taxable for the following reasons: That the old company, the new company and Vacuum were parties to a reorganization within the meaning of section 112 (i), subsections (1) and (2) of the Revenue Act of 1928, 26 U.S.C.A. § 112 note [1] and therefore the gain or loss if any, realized by the old company upon the receipt of the stock of the new company and Vacuum was not "recognized" or taxable within the meaning of section 112 (b), subsections (3), (4) and (5) of the Act, 26 U.S.C.A. § 112(b) (3–5) [2]; that the "obligation" of Vacuum, though it constituted "other property" within the meaning of section 112 (c) of the Act, 26 U.S.C.A. § 112(c) [3], did not have a determinable market value, and, therefore, no gain or loss could be recognized as having arisen out of its receipt. The respondents in appeals Nos. 6615 to 6622 further contend that the distribution to them of the stock of the new company and Vacuum by the old company upon its dissolution was "in pursuance of a plan of reorganization" to which the old company, the new company and Vacuum were parties, and, therefore, the receipt by them of such stock did not give rise to a "recog-

[1] Section 112(i) "Definition of Reorganization. As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

[2] "(b) Exchanges solely in kind—
* * * * *
"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of Corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation."

[3] "(c) Gain from exchanges not solely in kind—(1) If an exchange would be within the provisions of subsection (B) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

nized" or taxable gain under the provisions of section 112(g) of the Act, 26 U.S.C.A. § 112 note [4]. The Bank also relies upon the contention that the "obligation" of Vacuum had no market value and that, therefore, its receipt was not taxable. For these reasons, none of the respondents reported any taxable gain in their 1930 income tax returns as arising out of the receipt of the stock of the new company and the stock "obligation" of Vacuum.

The commissioner, however, determined as follows: That the old company and the new company were parties to a reorganization but that Vacuum was not a party; that consequently the stock and "obligation" of Vacuum were "other property" within the meaning of section 112 (c), supra, and that, therefore, the gain, if any, realized by the old company was taxable in an amount not in excess of the value of such "other property"; that the old company had realized a gain which would be "recognized" to the extent of $1,707,580.99, and that there was a deficiency in its income taxes for 1930 in the amount of $205,415.13; that the respondents in appeals Nos. 6615 to 6621, inclusive, as the transferees of the assets of the old company, were liable for deficiencies in like amount; that the Bank, respondent in appeal No. 6622, had realized a gain upon the receipt of the 8,786 shares of stock and the "obligation" of Vacuum, which was taxable as a liquidating dividend either in 1930 or 1931, and that there was a deficiency in its income taxes of either $170,125.31 in 1930 or of $168,518.63 in 1931.

All of the respondents thereupon appealed to the Board of Tax Appeals. While the cases were pending before the Board, the commissioner filed an amended answer in which he contended that the old company was not a party to any reorganization either with the new company or Vacuum, and, therefore, the gain, if any, realized by it was taxable in full; that the full amount of such gain was $2,299,639.29, and that the board should consequently determine an even greater deficiency than that originally set forth as against the old company and the respondents in Appeals Nos. 6615 to 6621, inclusive. No change of position, however, was taken with respect to the tax liability of the Bank, respondent in appeal No. 6622.

The Board filed an opinion in case No. 6614 (Independent Oil Co. v. Com'r, 35 B.T.A. 32) in which it held that the old company, the new company and Vacuum were parties to a reorganization; that the receipt by the old company of the stock of the new company and Vacuum did not give rise to a "recognized" or taxable gain; that the "obligation" of Vacuum had no determinable market value and that its receipt, therefore, was not taxable.

It also filed an opinion (unpublished) in case No. 6622, in which (relying upon its decision in case No. 6614 to the effect that the old company and Vacuum were parties to a "reorganization") it held that the distribution to the Trust of the stock and "obligation" of Vacuum did not give rise to a taxable gain under section 112 (g) of the Act, supra. It found, therefore, that there was no deficiency in either of the years 1930 or 1931.

The commissioner appealed to this court from the orders of redetermination entered in each of the cases which were consolidated for the purpose of these appeals.

As stated above, the real issue is whether or not the old company realized a taxable gain as a result of the receipt by it of the stock of the new company and the stock and "obligation" of Vacuum. The answer to this question depends upon the following three questions: (1) Whether or not the old company and the new company were parties to the reorganization within the meaning of the Act; (2) whether or not Vacuum was a party to the reorganization; and (3) whether or not the Board correctly held that the "obligation" of Vacuum did not have a determinable market value.

If all of the above questions are answered in the affirmative, then the orders of redetermination of the Board must be affirmed in all of the cases. If, however, any one of them is answered in the negative it follows that the gain, if any, to the old company is taxable either to the extent of the "other property" under section 112 (c) or, if there was no "reorgan-

---

[4] Section 112(g)—"Distribution of Stock on Reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the organization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized."

ization" at all, then the gain, if any, is taxable under the general provisions of the Act, and the orders of the Board in cases 6614 to 6621, inclusive, must be reversed. If question (2) in the above paragraph is answered in the negative, it follows that the distribution of the stock and "obligation" of Vacuum to the respondent in case No. 6622 was not one "in pursuance of a plan of reorganization" within section 112(g) of the Act as the Board found, and the cause must be remanded for redetermination of the tax.

In order to determine these questions a fuller statement of the facts is necessary. Prior to 1924, Benjamin Cohn operated a, gasoline distributing business. In that year the old company was incorporated to take over that business. He became the chief stockholder and substantially all of the remaining stock was owned by members of his family. The old company had no fixed source of supply for the gasoline it purchased, but bought from various manufacturers. Except for a few retail stations through which it sold directly to the public, substantially all of its sales were made to retail dealers. In the course of its business, the old company acquired various stocks, bonds, notes, mortgages and other investments which, except for being among its assets, were not directly connected with the business of distributing gasoline. According to the figures given in the commissioner's brief, these investments or "other assets" were valued at approximately $575,000. The assets used directly in the business were valued at about $1,500,000, and the good will was given a value of $2,000,000. Thus the "other assets" amounted to approximately 14% of the total worth ($4,075,000) of the old company.

Prior to 1929, Vacuum was engaged in selling a lubricating oil generally known as "Mobiloil". In that year, it entered into the gasoline business, and began to acquire interests in distributing concerns such as the old company. With a view to enlarging its distributing business Vacuum began negotiations with the old company. Vacuum was interested only in those assets of the old company which were directly involved in the business of distributing gasoline. As a result of the negotiations a contract was entered into between Vacuum and the Vacuum Investment Company on the one hand, and the stockholders of the old company on the other wherein it was provided that Vacuum was to acquire a 75% interest in the gasoline distributing business

and an option upon the remaining 25% interest. The stockholders of the old company were to retain the "other assets" and also, subject to the option of Vacuum, title to the unconveyed 25% interest in the business. In consideration for giving up a 75% interest in their business, they were to receive $2,625,000, in the stock of Vacuum.

It was then thought that the stock of Vacuum would increase in value, and Vacuum desired to be in a position to benefit by such increase, even as to the stock to be conveyed to the old company. In order to place Vacuum in such position, the terms of the payment were as follows: $1,-312,500 worth of stock in Vacuum (14,192 shares) was to be transferred outright to the old company, and the balance of $1,-312,500, guaranteed by Vacuum, was to be realized, if possible, out of the sale, over a five year period, of 8,786 shares of Vacuum stock (then having a value of $812,-500) which were to be placed in escrow for this purpose.

Vacuum insisted that a new corporation be formed so that the distributing business to be purchased by it would not be burdened by any hidden liabilities of the old company and that the old company be liquidated and dissolved as soon as possible. This arrangement was carried out.

On this appeal the commissioner makes the following contentions: That the old company was not a party to any reorganization within the meaning of the act and that, therefore, the entire gain, if any, realized upon the transactions involved was taxable; that even if the old company and the new company were parties to a reorganization, Vacuum was not a party for the reason that it was "no more than the efficient agent in bringing about" the reorganization (Groman v. Commissioner, 302 U.S. 82, 89, 58 S.Ct. 108, 112, 82 L.Ed. 63) and, therefore, the gain, if any, is taxable under section 112(c) of the Act, "in an amount not in excess of * * * the fair market value of" the stock and "obligation" of Vacuum, and that in any event, the Board erred in finding that the "obligation" of Vacuum was without a market value, and that the gain, if any, is taxable at least to the extent of the value of that "obligation" under section 112(c).

At first glance it would appear to be clear that both the old and the new companies were parties to a reorganization under section 112 (i) (1) and (2) of the

Act, for in exchanging its property for stock, the old company acquired not merely a majority, but all of the stock of the new company. The commissioner, however, contends that since the old company immediately transferred 75% of the stock of the new company to Vacuum its ownership thereof was without "continuity of interest", "transitory and without real substance" (Helvering v. Bashford, 302 U.S. 454, 458, 58 S.Ct. 307, 309, 82 L.Ed. 367) and, therefore, it was not a party to a reorganization within the meaning of section 112 (i) (1) (A).

As stated above, assets which the old company transferred to the new company constituted 86% of its total worth and included all of the assets essential to the operation of its business of distributing gasoline. The "other assets" retained by the old company, while substantial in amount, were merely investments held by it. If the old company had distributed these "other assets" to its stockholders prior to these transactions rather than afterward, it could not have been denied that the old company had transferred "substantially all" of its property to the new company. Instead of doing this, it transferred its distributing business to the new company first and then distributed its "other assets" to its stockholders as a liquidating dividend. As the "other assets" were never used to continue the old company in business, and as its liquidation was merely carrying out a previous agreement, it does not seem that the date of the distribution of these "other assets" should be considered as decisive of the issue. Under the peculiar circumstances of this case, it seems clear that "substantially all the properties" of the old company were transferred to the new company in exchange for stock in the latter. Smith v. Commissioner, 34 B.T.A. 702. Whether we consider the stock so acquired as a majority or less than a majority, a "reorganization" as defined in section 112 (i) (1) (A) took place. It is clear that the old company and its stockholders continued to be directly interested in the assets transferred, at least to the extent of the 25% interest in the stock of the new company and to that extent no gain or loss could be "recognized". Groman v. Commissioner, supra.

The second question is whether or not the old company and Vacuum were parties to a reorganization. The opinion of the Board that they were was filed before the Supreme Court had decided the cases of Groman v. Commissioner and Helvering v. Bashford, supra, upon which the commissioner here relies. In the Groman case as the result of an agreement between "Glidden", a corporation, and the stockholders of a corporation called "Indiana", a new corporation called "Ohio" was formed for the purpose of acquiring all of the stock and assets of Indiana. Glidden acquired all of the common stock of Ohio, and the stockholders of Indiana acquired (1) prior preference stock of Glidden, (2) cash furnished by Glidden, and (3) prior preference stock of Ohio. The issue before the court was whether or not the gain resulting from these transactions to the stockholders of Indiana was recognized to the extent of the value of the Glidden stock received by them. The taxability of the gain, insofar as it arose from the receipt of the cash furnished by Glidden and the receipt of the Ohio stock, was not in dispute, the gain from the former being admittedly taxable under the provisions of section 112(c), and the gain from the latter being admittedly not taxable as Indiana and Ohio were considered to be parties to a reorganization.

In deciding the issue presented, the Supreme Court compared the position of Glidden to that of a banker, broker, or promoter, and held that, while it was the "efficient agent in bringing about a reorganization * * * it was not, in the natural meaning of the term, a party to the reorganization". 302 U.S. 82, 89, 58 S.Ct. 108, 112, 82 L.Ed. 63. The court then said: " * * * the purpose of the reorganization sections of the statute, which, as we have said, is that where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss. If cash or 'other property,' that is, property other than stock or securities of the reorganized corporations, is received, present gain or loss must be recognized. Was not Glidden's prior preference stock 'other property' in the sense that its ownership represented a participation in assets in which Ohio, and its shareholders through it, had no proprietorship? Was it not 'other property' in the sense that qua that

stock the shareholders of Indiana assumed a relation toward the conveyed assets not measured by a continued substantial interest in those assets in the ownership of Ohio, but an interest in the assets of Glidden a part of which was the common stock of Ohio? These questions we think must be answered in the affirmative."

It will· be seen that Vacuum occupies substantially the same position in the case at bar ·as did Glidden in the Groman case, and that the old and new companies occupy the same relative positions as did Indiana and Ohio. The old company and its stockholders continued to be directly interested in the assets transferred only to the extent of 25% of the stock of the new company and while they continued to be indirectly interested in those assets through ownership of stock of Vacuum among whose assets was the remaining 75% of the stock of the new company, under the opinion in the Groman case, that is not a "continued substantial interest". The fact that Vacuum was active in bringing about the reorganization between the old and the new companies does not alter· the situation. Helvering v. Bashford, supra. Consequently Vacuum was not a party to the reorganization.

■ It follows that the stock and "obligation" of Vacuum were "other property" within the meaning of section 112(c) and that the gain, if any, realized by the old company, is taxable to the extent of the value of that "other property". Consequently the orders of redetermination of the Board in cases 6614 to 6621 must be reversed, and the causes remanded for further proceedings in accordance with this opinion. It also follows that the transfer of the stock and the "obligation" of Vacuum to the Bank, respondent in appeal No. 6622, was not a distribution "in pursuance of a plan of reorganization" within the meaning of section 112(g). Accordingly that cause must also be reversed and remanded.

■ It is unnecessary to determine whether or not the "obligation" of Vacuum had a determinable market value by itself. It may well be, as the Board found, that it had no such value apart from the stock to which it applied. However, since the gain, if any, arising from the receipt of the stock of Vacuum is taxable it is obvious that the value of that stock must be computed in relation to the "obligation", for an en-

forceable promise or guaranty that stock valued at $875,000 would bring $1,325,000 within five years, substantially increases the present value of the stock or, at least, has a value of its own.

The orders of the Board in each of these cases are reversed and the causes remanded for redetermination of the taxes in accordance with this opinion.·