MILTON SMITH, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77414—77417. Promulgated June 25, 1936.

*George J. Perkins, Esq.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Sarah Avis Smith; C. A. Smith; Milton Smith, Sarah Avis Smith, and C. A. Smith, in behalf of Smith Transportation Co.

OPINION.

ARUNDELL: The chief issue for decision is whether the transaction referred to above constitutes a nontaxable reorganization within the meaning of section 112 (i) (1) of the Revenue Act of 1928.[2]

The petitioners do not contend that there was a strict statutory merger, but rather that the requirements of the parenthetical part of clause "(A)" have been met in that the Shaver Co. acquired "substantially all the properties" of the Smith Co. for stock. Following the transfer of properties the Smith Co. dissolved and the Shaver Co. operated the two steamship lines as one enterprise. The parties characterized the amalgamation of their interests as a merger, and it is evident that the transaction meets the test of *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, as at least partaking "of the nature of a merger", and it also comes within the requirement laid down in *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378, in that "the seller acquired a definite and substantial interest in the purchaser."

So there is left only the question of whether the assets taken over by the Shaver Co. constituted "substantially all of the properties" of the Smith Co. If so, decision must be for the petitioners. Assets

---

[2] The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) * * *.

of the Smith Co. having a book value of $133,374.08, a cost of $117,-743.32, and a selling price based on stock value of $170,000 were acquired by the Shaver Co. The Smith Co. retained assets of the value of $52,082.59 with which to liquidate liabilities of $45,956.98. Of the assets retained, only $41,046.46 represented cash and receivables. The remainder was made up of land, buildings, and automobiles. There is some doubt as to whether land and buildings valued at $5,232.94 and carried on the books as "buildings" were the property of the Smith Co. or of the Smiths personally, but we regard this as an unimportant detail.

The respondent contends that the phrase "substantially all the properties" refers to the gross assets, rather than net, and that the 71 percent of gross assets transferred in this case was not "substantially all." We think it unnecessary to decide whether the quoted phrase refers to the gross value of the assets or such value less liabilities. Whether the properties transferred constitute "substantially all" is a matter to be determined from the facts and circumstances in each case rather than by the application of any particular percentage. It might well be, as said by the respondent, that if a corporation having gross assets of $1,000,000 and liabilities of $900,000 transferred only the net assets of $100,000 the result would not come within the intent of Congress in its use of the words "substantially all." Any number of further suppositions might be made concerning the case put by the respondent. The transferor corporation might continue in business; it might not discharge its liabilities; it might use the retained assets in various ways such as the inauguration of a different line of business; the assets might be distributed to the stockholders. A concrete case is that of *David Gross*, 34 B. T. A. 395, where a corporate transferor retained gross assets of $236,394.03 and had liabilities of only $57,505.70. The net assets retained amounted to about 20 percent of the total assets before the transfer. We held that under the facts there the 80 percent transferred did not constitute "substantially all." In that case the transferor after discharging its liabilities had left nearly $180,000 in assets as against assets of $747,890 transferred. In *Arctic Ice Machine Co.*, 23 B. T. A. 1223, the transferor transferred all of its assets, but immediately received back about 32 percent thereof, resulting in a transfer of about 68 percent. There was no finding in that case as to what disposition was made of the retransferred 32 percent of assets. In *Alice V. St. Onge*, 31 B. T. A. 295, all of the transferor's liabilities were assumed by the transferee corporation. The transferor received from the transferee $467,947.74, which it used to buy stock of the transferee. The transferor retained assets of the value of $148,125, which it distributed to its stockholders. In *Pillar Rock Packing Co.*, 34 B. T. A. 571, assets having a cost to the transferor of $60,536.06 were trans-

ferred for cash, notes and stock in the amount of $94,691.50. The transferor retained assets worth $45,294.52 and there was no showing of what disposition was made of them. All of these cases are distinguishable from the one before us. In each of them there was retained a substantial amount of assets in proportion to the assets transferred and in none was the retention for the sole purpose of liquidating liabilities. In this case, as above pointed out, assets having a book value, in round figures, of $133,000 were transferred for stock worth $170,000; assets worth $52,000 (including the doubtful real estate) were retained for the purpose of meeting liabilities of $46,000. After discharging its liabilities—and this was done within the year—the outside figure of assets remaining with the petitioner would be $6,000, which is certainly not an excessive margin to allow for the collection of receivables with which to meet its liabilities. No assets were retained for the purpose of engaging in any business or for distribution to stockholders. In these circumstances, we are of the opinion that the assets worth $133,374.08 transferred to the Shaver Co. constituted "substantially all" the assets of the Smith Co. within the meaning of that statutory phrase and the transaction is nontaxable under section 112 (i) (1) (A). Cf. *Western Industries Co.* v. *Helvering*, 82 Fed. (2d) 461, where assets of a book value of $479,835.79 were transferred for a consideration of cash, notes and stock worth $1,123,537.26, the retained assets were worth $302,225.52, which was $194,575.09 in excess of the liabilities of $107,650.43, and it was held by the Court of Appeals for the District of Columbia that the assets transferred constituted "substantially all."

The respondent further contends that even though there was a reorganization the Shaver Co. stock was not distributed to the Smiths "in pursuance of a plan of reorganization" (sec. 112 (g)), and that, therefore, the distribution is taxable under section 115. His argument is that a plan by the Smith Co. to distribute the stock is not sufficient to meet the provisions of section 112 (g), but that the plan must have been part of the agreement between the Smith Co. and Shaver Co. We doubt whether this view is sound, but we do not find it necessary to pass upon it. The contract of January 9, 1930, between the Smith Co. and Shaver Co. and the stockholders thereof provides that the Shaver Co. stock "shall be issued to the party of the second part [Smith Co.] and/or the parties of the fourth part [Smih stockholders] * * *." Resolutions of the Smith Co. directors and stockholders provided for the proportionate distribution of the Shaver Co. stock to the Smiths. This in our opinion is sufficient to establish that the Shaver Co. stock went to the Smiths in pursuance of the plan of reorganization.

We are satisfied, upon consideration of all the evidence, that the value of the Shaver Co. stock received in the exchange was not in excess of $68 per share, which figure we have found as a fact represents its value.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK, LEECH, TURNER, and TYSON dissent.