JAMES ARMOUR, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ARMOUR EXCAVATING, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JAMES ARMOUR AND FLORENCE K. ARMOUR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3504–62, 3505–62, 3513–62. Filed December 4, 1964.

*Logan Morris*, for the petitioners.

*Albert Squire*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax as follows:

DOCKET NO. 3504–62, JAMES ARMOUR, INC.

| Taxable year ended— | Deficiency |
| --- | --- |
| Sept. 30, 1958 | $752.81 |
| Sept. 30, 1959 | 42,806.55 |

DOCKET NO. 3505–62, ARMOUR EXCAVATING, INC.

| Taxable year ended— | Deficiency |
| --- | --- |
| May 31, 1960 | $58,262.10 |

DOCKET NO. 3513–62, JAMES ARMOUR AND FLORENCE K. ARMOUR

| Taxable year ended— | Deficiency |
| --- | --- |
| Dec. 31, 1959 | $665,944.60 |

The petitioner James Armour, Inc., concedes the correctness of the respondent's determination of a deficiency of $752.81 for the taxable year ended September 30, 1958. Certain of the other issues raised by the pleadings have been settled by stipulations of the parties. The principal issue remaining for decision is whether the transfer of construction equipment and certain other assets by James Armour, Inc., to Armour Excavating, Inc., and the subsequent distributions by James Armour, Inc., to its stockholders (the individual petitioners herein) of its remaining assets, including an account receivable from Armour Excavating, Inc., on account of the transfer of the construction equipment, constituted a sale of such equipment and a liquidation of James Armour, Inc., pursuant to section 337 of the Internal Revenue Code of 1954, with the result that such distributions constituted liquidating distributions to the individual petitioners taxable as capital gains pursuant to sections 331 and 346 of the Code, or whether such transactions constituted a reorganization under section 368(a)(1)(D) of the Code, rendering the distributions taxable to the individual petitioners as dividends under section 356 of the Code to the extent of the undistributed earnings and profits of James Armour, Inc.

If it is held that there was a reorganization, issues are raised with respect to the amount of earnings and profits of James Armour, Inc., available for payment of taxable dividends. Also presented, in that event, is the issue whether any portion of the distributions represents an informal dividend from Armour Excavating, Inc., to its shareholders, who are the individual petitioners herein.

If it is held that there was not a reorganization, the further question is presented whether James Armour, Inc., is entitled to any depreciation on construction equipment for the year in which it was sold (the taxable year ended September 30, 1959) in view of the fact that

the selling price exceeded the adjusted basis of the equipment at the beginning of such year.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner James Armour, Inc. (hereinafter referred to as Armour, Inc.), was incorporated under the laws of Pennsylvania on October 1, 1946, for the purpose of engaging in the business of general heavy construction and other similar construction activities. At all times material hereto its principal office was at Philadelphia, Pa. It reported its taxable income on the accrual method of accounting and on a taxable year ended September 30. It filed its Federal income tax returns for the taxable years ended September 30, 1958, and September 30, 1959, with the district director of internal revenue at Philadelphia, Pa.

Petitioner Armour Excavating, Inc. (hereinafter referred to as Excavating), was incorporated under the laws of Pennsylvania on June 1, 1948, for the purpose of engaging in the business of general heavy construction and other similar construction activities, including excavation and grading for large industrial and commercial buildings. At all times material hereto its principal office was at Philadelphia. It reported its taxable income on the accrual method of accounting and on a taxable year ended May 31. It filed its Federal income tax return for the taxable year ended May 31, 1960, with the district director of internal revenue at Philadelphia, Pa.

At all times material hereto the stockholders and directors of both Armour, Inc., and Excavating were as follows:

| Name | Title | Number of shares of stock held |
| --- | --- | --- |
| James Armour | President | 49 |
| Florence K. Armour | Vice president | 1 |
| Margaret Deery | Secretary | 0 |

Petitioners James Armour and Florence K. Armour are husband and wife residing in Philadelphia, Pa. They filed a joint Federal income tax return for the taxable year 1959 on the cash receipts and disbursements method with the district director of internal revenue at Philadelphia, Pa. Hereinafter they will be referred to as the petitioners.

During the first 2 years of its existence Armour, Inc., was engaged primarily in excavation and substructure and underground facilities work for large industrial and commercial buildings, many of which

were located in the heavily populated areas of Philadelphia. This work was potentially dangerous to adjacent buildings, their occupants, and to underground utility lines. Armour, Inc., because of its short experience in business, was unable to obtain sufficient insurance coverage. During this same period Armour, Inc., acquired nearly $200,000 worth of construction equipment. Shortly after it was organized it anticipated that its operations would require about $1 million worth of construction equipment.

In 1948, because of its anticipated acquisition of a large amount of fixed assets, the extreme risk and hazards of the work performed, and its inability to obtain adequate insurance coverage, it decided, upon the basis of legal and financial advice, that to protect itself from liability there should be formed another corporation to which it would rent equipment and which would perform the actual work of construction. Accordingly, Excavating was incorporated on June 1, 1948, and it conducted any new construction business. Thereafter, except for completing contracts already under way, Armour, Inc., engaged in no construction business. It continued to hold and own all its construction equipment and fixed assets and rented them to Excavating. It also rented construction equipment to third parties. In addition to renting from Armour, Inc., the construction equipment which it needed in its construction business, Excavating also rented such equipment from Armour, Inc., for renting to third parties. Excavating furnished the operators for the equipment which it rented from Armour, Inc. Armour, Inc., billed Excavating monthly on the basis of actual hours each machine was used, charging rates prevailing in the Philadelphia area. After Excavating was organized it employed all the personnel of Armour, Inc., except dispatchers, mechanics who took care of the construction equipment, and certain office personnel.

Armour, Inc., and Excavating each maintained its principal office at 7921 Oxford Avenue, Philadelphia, Pa., prorating expenses. Each maintained separate books of account and financial statements, and each reported social security taxes separately. As a result of the invoicing of rentals from Armour, Inc., to Excavating and Excavating in turn invoicing and billing the customers, paperwork doubled.

After its formation in 1948, Excavating continued to do substructure and underground facilities work, and also engaged in underground utility-line construction, resurfacing, renting of construction equipment, and handling of materials, which consisted of unloading iron ore for ground storage and reloading it into railroad cars for mill shipment. Between June 1, 1954, and May 31, 1960, there was a gradual increase in materials handling and a gradual decrease in substructure and underground facilities work. At an undisclosed

time Excavating began to specialize in utility-line construction. The following schedule shows the sources of the gross receipts of Excavating in the taxable years ended May 31, 1955, and May 31, 1960:

| Source of gross receipts | Year ended May 31, 1955 | Year ended May 31, 1960 |
|---|---|---|
| Materials handling (iron ore) | $22, 100. 70 | $1, 998, 874. 41 |
| Underground utility-lines resurfacing and rentals | 1, 446, 710. 10 | 1, 080, 994. 16 |
| Substructures and underground facilities | 1, 266, 851. 55 | 19, 825. 37 |
| Total gross receipts | 2, 735, 662. 35 | 3, 099, 693. 94 |

Utility-line construction, as well as the materials handling, was substantially less hazardous than the substructure and underground facilities work.

By 1956 Excavating had increased its insurance coverage to about $1 million. On October 1, 1957, Lloyds of London issued to Excavating an all-risk override policy of $2 million covering both liability and property damage, such policy to come into existence if Excavating's liability should exceed its other insurance coverage.

On March 6, 1956, the Legislature of Pennsylvania passed the Selective Sales and Use Tax Act which became effective on March 7, 1956. Over the period from January 1957 to June 1959, Excavating paid to Armour, Inc., in connection with its rental of construction equipment, sales taxes totaling $33,008.72.

Late in 1957 Armour, Inc., discontinued the purchase of construction equipment. In August 1957, Excavating began to purchase construction equipment. On August 31, 1957, Excavating owned equipment which had cost $849.75. On December 31, 1959, it had equipment which had cost $401,389.06, exclusive of any equipment acquired, as described hereinafter, from Armour, Inc.

On June 1, 1959, the stockholders of Armour, Inc., adopted a plan of liquidation and a resolution to dissolve. Such plan provided that the officers would endeavor to sell all the corporate assets except cash and that there would be distributed to the stockholders within 12 months all assets either in kind or in cash not needed to meet claims. Treasury Form 966 (return of information under section 6043 of the Internal Revenue Code of 1954), dated June 18, 1959, was duly filed with the Internal Revenue Service. One factor influencing the decision to dissolve was the conclusion that the reason for the employment of two corporations had ceased since Excavating's operations involved less risk than before and since it had obtained adequate insurance coverage. Other factors were the desirability of eliminating substantial sales taxes on intercompany transactions and of decreasing the paperwork involved in the maintenance of two corporations.

The petitioner had its construction equipment appraised by independent appraisers. Between June 1, 1959, the date of adoption of the plan of liquidation, and June 30, 1959, Armour, Inc., sold to third parties certain equipment having a basis of $2,747.91, for $21,500.

The book value of the assets of James Armour, Inc., on June 30, 1959, was $639,170.88, composed as follows:

| | | | Net book value |
|---|---|---|---|
| Current assets: | | | |
| Cash | | | $134,001.55 |
| Account receivable due from Excavating | | | 184,443.40 |
| Account receivable due from petitioner | | | 4,948.35 |
| Accounts receivable due from others | | | 2,700.00 |
| Total current assets | | | $326,093.30 |
| Fixed assets (at cost): | | | |
| Construction equipment | $972,004.88 | | |
| Less—reserve for depreciation | 808,476.12 | | |
| | | 163,528.76 | |
| Land and buildings, 7921 Oxford Ave | 85,706.86 | | |
| Less—reserve for depreciation | 14,371.34 | | |
| | | 71,335.52 | |
| Buildings, Philmont Ave | 83,921.61 | | |
| Less—reserve for depreciation | 13,511.15 | | |
| | | 70,410.46 | |
| Furniture and fixtures | 10,419.97 | | |
| Less—reserve for depreciation | 7,142.72 | | |
| | | 3,277.25 | |
| Automobiles | 4,722.35 | | |
| Less—reserve for depreciation | 196.76 | | |
| | | 4,525.59 | |
| Total fixed assets | | | 313,077.58 |
| Total assets | | | 639,170.88 |

On June 30, 1959, the board of directors of Excavating authorized it to offer to purchase from Armour, Inc., for $620,774.98, its construction equipment. By letter dated June 30, 1959, Excavating made such offer and on the same date the board of directors of Armour, Inc., authorized the sale of such equipment to Excavating for $620,774.98. On July 1, 1959, Armour, Inc., transferred to Excavating its construction equipment which then had an adjusted basis of $163,528.76 and a fair market value of $620,774.98. This transfer did not require any physical movement of the equipment. Simultaneously Excavating recorded on its books and records as a debt an account payable to Armour, Inc., of $620,774.98, and Armour, Inc., recorded on its books and records an account receivable of $620,774.98 from Excavating. This account receivable had a fair market value equal to its face value on July 1, 1959. On July 1, 1959, after such equipment was transferred to Excavating, the employees of Armour, Inc., were placed on Excavating's payroll. On August 1, 1959, the furniture and fixtures and automobiles were transferred by Armour, Inc., to Excavating at their net book values, which were approximately their respective fair market values.

The item "Buildings—Philmont Ave." in the above tabulation was a storage shed which was used by Armour, Inc., to protect its equipment from the weather. Armour, Inc., had erected the shed on land leased to it by the petitioners. The lease was canceled and terminated on August 1, 1959, when the depreciated cost of the shed to Armour, Inc., was $70,410.46, and possession of the land together with the storage shed was delivered to petitioners, who then leased the property to Excavating.

The board of directors of Armour, Inc., from time to time authorized distributions to its stockholders in liquidation and in cancellation and redemption of all its capital stock. The following tabulation shows all the distributions in liquidation:

| Distribution No. | Date of distribution | Item | James Armour | Florence K. Armour |
|---|---|---|---|---|
| | *1959* | | | |
| 1 | June 22 | Cash | $98,000.00 | $2,000.00 |
| 2 | Aug. 1 | ___do | | 2,225.10 |
| 2 [1] | ___do | Real estate | 109,030.00 | |
| 3 | Aug. 31 | Cash | 86,970.00 | 1,774.90 |
| 4 | Nov. 2 | ___do | 294,000.00 | 6,000.00 |
| 5 | Nov. 30 | ___do | | 10,428.68 |
| 5 [2] | ___do | Accounts receivable, Armour Excavating, Inc. | 508,085.08 | |
| 5 | ___do | Accounts receivable, Einholz | 400.00 | |
| 5 [3] | ___do | Overpayment of capital stock tax | 2,520.00 | |
| | | Total | 1,099,005.08 | 22,428.68 |

[1] This consists of land and buildings at 7921 Oxford Ave., Philadelphia, at their fair market value of $109,030. This property was then leased by petitioner, James Armour, to Excavating. The property had been used by Armour, Inc., as an office and for storage and maintenance of its vehicular fleet and other equipment.
[2] This item represents the balance of the account receivable set up on the books of Armour, Inc., in connection with the prior transfer of construction equipment to Excavating.
[3] The claim based on an overpayment of capital stock tax of $2,520 was subsequently denied by the Commonwealth of Pennsylvania.

The account receivable of $508,085.08 due from Excavating on November 30, 1959, was thereafter paid as follows:

| | |
|---|---|
| Jan. 4, 1960 | $50,000.00 |
| Feb. 2, 1960 | 50,000.00 |
| Feb. 5, 1960 | 50,000.00 |
| Apr. 11, 1960 | 300,000.00 |
| May 31, 1960 | 19,892.06 |
| July 12, 1960 | 5,000.00 |
| July 15, 1960 | 5,000.00 |
| Jan. 2, 1961 | 2,807.31 |
| Jan. 3, 1961 | 25,385.71 |
| | 508,085.08 |

On March 16, 1960, the Department of State of the Commonwealth of Pennsylvania issued a certificate of dissolution of Armour, Inc.

After Excavating received the construction equipment from Armour, Inc., it continued to rent equipment to third parties. In

its return for its taxable year ended May 31, 1960, it reported gross receipts from rental of equipment in the amount of $385,289.29.

Armour, Inc., reported taxable income on its Federal income tax returns for the taxable years ended September 30, 1956, 1957, and 1958, in the respective amounts of $77,120.50, $76,835.82, and $94,954.21. It paid dividends of $20 per share, or $1,000, during its first taxable year (the year ended September 30, 1947). Thereafter, in each of its taxable years ending prior to October 1, 1958, it paid dividends of $100 per share, or $5,000. As of October 1, 1958, Armour, Inc., had accumulated earnings and profits of $638,683.99. Its taxable income for the taxable year ended September 30, 1959, without regard to the additional taxable income determined in the notice of deficiency, was $51,164.43, and its income tax liability with respect to such $51,164.43, was $19,788.18.

Excavating reported taxable income on its income tax returns for the taxable years ended May 31, 1957, 1958, and 1959, in the respective amounts of $156,337.45, $136,602.62, and $96,996.27. It paid no dividends in any of its taxable years ended prior to June 1, 1959. Excavating, as of June 1, 1959, had accumulated earnings and profits of $505,987.43. Its taxable income for the taxable year ended May 31, 1960, without regard to the additional taxable income determined in the notice of deficiency, was $517,442.47, and its income tax liability with respect to such $517,442.47 was $263,570.08.

In their joint income tax return for 1959 petitioners reported long-term capital gain of $1,110,123.53 from "Stock, James Armour, Inc.—Liquidated under Sec. 337 I.R.C.," showing date acquired as 1946, date sold as 1959, gross sales price of $1,121,433.76,[1] cost of $5,000, and expense of sale of $6,319.23.

In the notice of deficiency the respondent increased by $1,110,123.53 the amount of the ordinary income reported by the petitioners with the explanation:

It is determined that section 356(a)(2) of the Internal Revenue Code of 1954 requires that you treat as dividends the $1,110,123.53 which you reported on Schedule D of your joint income tax return as long-term capital gains from the liquidation of James Armour, Inc. You received this amount pursuant to a reorganization of a type described in section 368(a)(1)(D), in which assets of James Armour, Inc., were transferred to Armour Excavating, Inc., and in pursuance of which, stock of Armour Excavating, Inc., was in substance and effect, distributed to you in a transaction which qualifies under sections 356 (a)(1) and 354 of the Internal Revenue Code of 1954.

Consistently, the respondent excluded the same amount from long-term capital gain.

[1] The parties are agreed that this amount should be reduced by $2,520, the amount of the claim for refund of Pennsylvania capital stock tax which, in 1960, was denied by the Department of Revenue of the Commonwealth of Pennsylvania.

In its income tax return for its fiscal year ended September 30, 1959, petitioner Armour, Inc., claimed a deduction for depreciation of $93,820.53, of which $87,803.80 was depreciation on the assets transferred to Excavating.

In the notice of deficiency the respondent disallowed $82,320.29 of the depreciation claimed with the explanation that "your deductions for depreciation * * * have been reduced by disallowance of depreciation on certain assets in respect to which prior years' allowances for depreciation have reduced your unrecovered basis to or below salvage value. Your basis for computing gain or loss on sale of these assets has been increased accordingly."

In its income tax return for the taxable year ended May 31, 1960, Excavating claimed a depreciation deduction of $339,729.48, part of which was based on the cost to it of the assets acquired from Armour, Inc. For the purpose of computing gain or loss on the sale of certain of such assets it adjusted the basis of such assets accordingly.

In the notice of deficiency respondent disallowed $110,711.34 of the depreciation claimed, with the explanation "it has been determined that the basis of assets acquired by you from James Armour, Inc., as a result of the reorganization to which both you and James Armour, Inc. were parties, is the same as in the hands of James Armour, Inc. on June 30, 1959." Consistently, the respondent increased the gain or decreased the loss reported by the petitioner on the sale of certain of such assets, by using the carryover basis, adjusted by the lesser amount of depreciation allowed.

The transactions of July and August 1959, including the transfer of assets from Armour, Inc., to Excavating, and the distributions by Armour, Inc., to its stockholders in the period from June to November 1959, in cancellation of their stock of Armour, Inc., constituted integral steps in a reorganization of Armour, Inc.

OPINION

The petitioners contend that they received the assets of Armour, Inc., in complete liquidation of that corporation within the intendment of section 331 of the Internal Revenue Code of 1954;[2] and that the amounts thus received should be treated as in full payment in exchange for their stock of Armour, Inc., thereby resulting in cap-

---

[2] SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS.

(a) GENERAL RULE.—

(1) COMPLETE LIQUIDATIONS.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.

(2) PARTIAL LIQUIDATIONS.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.

ital gain to them. They contend that, within the purview of section 337 of the Code,[3] Armour, Inc., adopted a plan of complete liquidation, and that within the 12-month period thereafter it sold certain of its property, including its construction equipment, to Excavating at fair market value, and distributed all of its assets in complete liquidation.

The respondent determined, and contends, that the various transactions, including the distribution by Armour, Inc., of its assets to the petitioners, were merely steps in an integrated transaction constituting a reorganization within the meaning of sections 368(a)(1)(D) and 354 of the Code,[4] and that the gain realized by the individual petitioners upon the surrender of their Armour stock is taxable under

---

[3] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[4] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

\* \* \* \* \* \* \*

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

\* \* \* \* \* \* \*

(c) CONTROL.—For purposes of part I (other than section 304), part II, and this part, the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.

(a) GENERAL RULE.—

(1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(b) EXCEPTION.—

(1) IN GENERAL.—Subsection (a) shall not apply to an exchange in pursuance of a plan of reorganization within the meaning of section 368(a)(1)(D), unless—

(A) the corporation to which the assets are transferred acquires substantially all of the assets of the transferor of such assets; and

(B) the stock, securities, and other properties received by such transferor, as well as the other properties of such transferor, are distributed in pursuance of the plan of reorganization.

section 356 of the Code [5] as a dividend received by them from Armour, Inc., to the extent of Armour's undistributed earnings and profits.

It is well settled that it is proper to consider the situation as it existed at the beginning and end of a series of steps to determine whether a statutory reorganization occurred, and that the liquidation of a corporation may be merely a step in a reorganization. *Love* v. *Commissioner*, (C.A. 3) 113 F. 2d 236, affirming 39 B.T.A. 172; [6] *Heller* v. *Commissioner*, (C.A. 9) 147 F. 2d 376, affirming 2 T.C. 371, certiorari denied 325 U.S. 868; *Lewis* v. *Commissioner*, (C.A. 1) 176 F. 2d 646, affirming 10 T.C. 1080; [7] *Survaunt* v. *Commissioner*, (C.A. 8) 162 F. 2d 753, affirming 5 T.C. 665; *Liddon* v. *Commissioner*, (C.A. 6) 230 F. 2d 304, affirming 22 T.C. 1220, certiorari denied 352 U.S. 824; *Southwell Combing Co.*, 30 T.C. 487; *Commissioner* v. *Morgan*, (C.A. 3) 288 F. 2d 676, reversing 33 T.C. 30, certiorari denied 368 U.S. 836, rehearing denied 369 U.S. 826; *Ethel K. Lesser*, 26 T.C. 306; *David T. Grubbs*, 39 T.C. 42; *Joseph C. Gallagher*, 39 T.C. 144; *Pridemark, Inc.*, 42 T.C. 510, on appeal (C.A. 4); and *John G. Moffatt*, 42 T.C. 558, on appeal (C.A. 9). It should be added that this principle is reflected in section 1.331–1(c) of the Income Tax Regulations, which provides:

A liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may, however, have the effect of the distribution of a dividend or of a transaction in which no loss is recognized and gain is recognized only to the extent of "other property." * * * [8]

---

[5] SEC. 356. RECEIPT OF ADDITIONAL CONSIDERATION.
  (a) GAIN ON EXCHANGES.—
    (1) RECOGNITION OF GAIN.—If—
      (A) section 354 or 355 would apply to an exchange but for the fact that
      (B) the property received in exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,
    then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.
    (2) TREATMENT AS DIVIDEND.—If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.

[6] In *Love* v. *Commissioner*, (C.A. 3) 113 F. 2d 236, it was stated: "The so-called liquidating dividend was but a step, albeit an essential one, in the reorganization."

[7] In *Lewis* v. *Commissioner*, (C.A. 1) 176 F. 2d 646, it was stated: "The liquidation of the old company does not change matters because a statutory reorganization may encompass as one of its incidents the liquidation of one of the corporations a party to the reorganization."

[8] In connection with the enactment of the Internal Revenue Code of 1954, the House bill had originally contained a provision dealing with the situation in which a corporation distributes all its assets in complete liquidation and the business assets are reincorporated, the stockholders retaining the corporation earnings. Such provision was eliminated with the explanation that the possibility of tax avoidance in this area "can appropriately be disposed of by judicial decision or by regulation within the framework of the other provisions of the bill." H. Rept. No. 2543 (Conf. Rept.), 83d Cong., 2d Sess., p. 41.

In *Lewis* v. *Commissioner, supra,* it was stated:

the essence of [a statutory reorganization] is a continuance of the proprietary interests in the continuing enterprise under modified corporate form, the transaction being deemed insufficiently closed economically to justify a tax at the time, except in so far as the stockholder gets something in addition to stock or securities in the reorganized company.

In *Liddon* v. *Commissioner, supra,* the court stated:

The Tax Court not only relied upon the fact that one of the statutory definitions of a reorganization had been formally met, but also emphasized the substance of the situation presented, i.e., when the series of transactions was completed the petitioners were in control of the same going business as before, albeit in a new corporate shell, having in the meantime extracted a substantial portion of the accumulated earnings and profits of the business.

Armour, Inc., was incorporated in 1946. It originally engaged in the construction business, owning its own construction equipment. Thereafter, for reasons set forth in the Findings of Fact, Excavating was formed in 1948 to carry on the actual construction business, but Armour, Inc., continued to hold the assets and equipment necessary to that business, and rented them to Excavating. Both corporations were wholly owned by the petitioners. This division of operations continued until 1959 when the two operations were again joined. Armour, Inc., transferred its construction equipment, its furniture and fixtures, and its automobiles to Excavating and distributed its other assets to the petitioners. Included in the distribution was the office building which had been used by both Armour, Inc., and Excavating. This building was immediately leased by the petitioner James Armour to Excavating. Also leased to Excavating by the petitioners was a certain property, which contained a storage shed, which had theretofore been used by Armour, Inc., under lease from the petitioners. All personnel of Armour, Inc., were placed on the payroll of Excavating.

All the above transactions were related, and it is readily apparent that after they were effected the business enterprise theretofore carried on by Armour, Inc., namely, that portion of an overall construction business consisting of the ownership and maintainance of the equipment, was thereafter carried on by Excavating. The individual petitioners continued to own, through their ownership of Excavating, the same proprietary interest in the essential operating assets. During the interim, 1948 to 1959, that the overall construction business was divided between Armour, Inc., and Excavating, each corporation accumulated substantial earnings—Armour accumulating approximately $638,000 and Excavating accumulating about $505,000. Upon the liquidation and dissolution of Armour, Inc., the petitioners received and retained cash and accounts receivable of about $1 million in addition to certain real estate of a value of approximately $109,000.

We think the substance of all these transactions was a statutory reorganization of Armour, Inc., in connection with which the petitioners retained the cash and accounts receivable.

Section 368(a)(1)(D) of the Code basically provides that the term "reorganization" includes a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or one or more of its shareholders is in control of the corporation to which the assets are transferred. As is evident from what has been said above, these conditions are literally met in the instant case.

The petitioners contend, however, that the various transactions here do not constitute a reorganization within the meaning of section 368(a)(1)(D), since there has not been met the statutory requirement that stock or securities of the corporation to which the assets are transferred be distributed in a transaction which qualifies under section 354, 355, or 356 of the Code. They point out that there was no stock of Excavating actually transferred to either Armour, Inc., or the individual petitioners. However, the petitioners already owned all the stock of Excavating and it was not necessary that further stock be issued in order that they might retain their same proprietary interest in the assets received by Excavating. The issuance of further stock would have been a meaningless gesture, and we cannot conclude that the statute requires such a vain act. We conclude, therefore, that there was in substance an exchange of stock of Armour, Inc., for stock of Excavating, which meets the requirements of sections 354 and 356 of the Code (sec. 355 has no application here). See *Commissioner* v. *Morgan, supra,* where, in an analogous situation, the court held that the stock exchange requirements of section 112(b)(3) and (c) of the Internal Revenue Code of 1939 (corresponding to secs. 354(a)(1) and 356(a)(1)(B) of the 1954 Code) were met. The court there stated:

If the transferor's assets had been transferred to a newly formed corporation in exchange for stock, there is no question that the boot would have been taxable as dividend income. That an existing corporation in which the taxpayer was the sole shareholder was used instead of a newly formed one cannot alter the true nature of the transaction. Here, the issuance of new stock would have been a meaningless gesture since the stock the taxpayer already held represented the total value of all the assets except for the boot.

See also *Liddon* v. *Commissioner, supra; David T. Grubbs, supra;* and *John G. Moffatt, supra.*

The petitioners stress the fact that Excavating paid to Armour, Inc., the equivalent of the fair market value of all assets which were transferred to it by Armour, Inc., and contend that accordingly there was no occasion for a transfer of stock from Excavating to Armour, Inc., and that hence it cannot be considered that upon the surrender

by the stockholders of Armour, Inc., they received any stock of Excavating. They argue that *Commissioner* v. *Morgan, supra,* is not proper authority for holding in the instant case that there was in effect an exchange of stock, as required by the statute, since in that case the transferor corporation transferred to the transferee corporation valuable assets without consideration. It is true that in that case the transferor corporation tranferred to the transferee corporation possession of, and the right to use, if not the title to, certain investment statistical and research material, without consideration. However, as we read the opinion of the court in that case, the holding that the exchange requirement of section 112(b)(3) and (c) was met was not based upon the reasoning that in effect stock of the transferee corporation was issued to the transferor corporation in exchange for any assets transferred without consideration. Rather, we construe that case as holding that the exchange requirements are met if, when a series of transactions is completed, the stockholders of the old corporation retain their proprietary interest in the same going business, although in another corporate shell. To the same effect is *Liddon* v. *Commissioner, supra.* As pointed out above, that is the situation in the instant case. We find nothing in *Turnbow* v. *Commissioner,* 368 U.S. 337, cited by the petitioners, to militate against the conclusion reached herein that all the elements necessary to a reorganization are here present.

The petitioners also contend that there was not here a section 368 (a)(1)(D) reorganization since, they claim, Excavating did not acquire substantially all the assets of Armour, Inc., as required by section 354(b)(1)(A) of the Code.

We recently had occasion, in *John G. Moffatt, supra,* to consider the term "substantially all" as used in that section. We there stated:

We note preliminarily that "[the] term 'substantially all' is a relative term, dependent on the facts of any given situation." *Daily Telegram Co.,* 34 T.C. 101, 105. Cf. *R. & J. Furniture Co.,* 20 T.C. 857, 864, reversed on another issue 221 F. 2d 795 (C.A. 6). "Whether the properties transferred constitute 'substantially all' is a matter to be determined from the facts and circumstances in each case rather than by the application of any particular percentage." *Milton Smith,* 34 B.T.A. 702, 705. * * * And finally, it must be remembered that the "substantially all" requirement "has been subjected to [a] construction which in effect applies a continuity test rather than mere blind percentages." *Southland Ice Co.,* 5 T.C. 842, 850, * * *

And in *Commissioner* v. *First National Bank of Altoona,* (C.A. 3) 104 F. 2d 865, the court, in considering the term "substantially all" as used in section 112(i)(1)(A) of the Revenue Act of 1928, stated in part:

As stated above, assets which the old company transferred to the new company constituted 86% of its total worth and included all of the assets essential to the operation of its business of distributing gasoline. The "other assets" re-

tained by the old company, while substantial in amount, were merely investments held by it. If the old company had distributed these "other assets" to its stockholders prior to these transactions rather than afterward, it could not have been denied that the old company had transferred "substantially all" of its property to the new company. Instead of doing this, it transferred its distributing business to the new company first and then distributed its "other assets" to its stockholders as a liquidating dividend. As the "other assets" were never used to continue the old company in business, and as its liquidation was merely carrying out a previous agreement, it does not seem that the date of the distribution of these "other assets" should be considered as decisive of the issue. Under the peculiar circumstances of this case, it seems clear that "substantially all the properties" of the old company were transferred to the new company in exchange for stock in the latter. * * *

In the instant case Armour, Inc., immediately prior to the transactions in question, had assets of a fair market value of about $1,230,000. Among these assets the principal item in the conduct of the business was the construction equipment which had a value of $620,774.98 which was transferred to Excavating. Also among the assets transferred were furniture and fixtures and automobiles of a value of $7,802.84. Thus, total assets of a value of $628,577.82 were transferred directly by Armour, Inc., to Excavating. The office building of Armour, Inc., having a value of $109,030 was not transferred but was distributed to the petitioner James Armour, who immediately leased the building to Excavating. Included in the above-stated value of assets of Armour, Inc., is a building (at a book value of $70,410.46) on property which Armour, Inc., had leased from the petitioners. Possession of this improved property reverted to the individual petitioners upon the cancellation of the lease, whereupon the petitioners leased the property to Excavating. The remaining assets, consisting of cash and accounts receivable of approximately $425,000, were not acquired by Excavating. Thus, it will be seen that as a result of the transactions Excavating either acquired title to, or the use of, all the assets essential to the conduct of the business enterprise. It seems clear that the assets which it did not acquire, namely, cash and accounts receivable, were not necessary to the conduct of the enterprise. If such unneeded assets had been distributed to the petitioners prior to the transfer of the essential assets to Excavating there clearly would be no question that substantially all of Armour, Inc.'s assets were acquired by Excavating. As pointed out in *Commissioner* v. *First National Bank of Altoona, supra*, the date of distribution is not decisive in such a situation as is here presented. Accordingly, we conclude that substantially all of the assets of Armour, Inc., were acquired by Excavating within the contemplation of section 354 (b) (1) (A) of the Code.

In view of the foregoing we have concluded, and have found as a fact, that the various transactions described herein constituted inte-

gral steps in a reorganization of Armour, Inc., under section 368(a) (1) (D) of the Code. Therefore, the petitioners are not entitled to the benefit of section 331 in computing the tax consequences of the distributions made to them by Armour, Inc.[9] The gain[10] to the petitioners upon the exchange of their stock of Armour, Inc., is taxable pursuant to the provisions of section 356(a) (1) (B) of the Code. Such exchange had the effect of the distribution to them of a dividend from that company within the meaning of section 356(a) (2) of the Code, and therefore so much of the gain as is not in excess of the undistributed earnings and profits of Armour, Inc., is to be treated as a dividend to them. The remainder of such gain is to be treated as gain from the exchange of property, as long-term capital gain.

The parties have stipulated that as of the beginning of the taxable year ended September 30, 1959, Armour, Inc., had accumulated earnings and profits of $638,683.99. In determining the amount of earnings and profits available for the payment of dividends in the taxable year ended September 30, 1959, there is also to be taken into account, of course, the taxable income for that year, which the parties have stipulated to be $51,164.43. Such available earnings and profits are to be reduced by Armour, Inc.'s income tax liability for such year, which the parties have stipulated is $19,788.18. See *Stern Brothers & Co.*, 16 T.C. 295, and *Estate of Esther M. Stein*, 25 T.C. 940, affirmed sub nom. *Levine* v. *Commissioner*, (C.A. 2) 250 F. 2d 798. On this basis the available earnings and profits would be $670,060.24.

The petitioners contend, however, that such amount should be reduced by an amount of $70,410.46, which the parties agree represents the unamortized cost, as of August 1, 1959, of a building erected by

---

[9] On brief the petitioners for the first time state that in entering into the various transactions they relied upon Rev. Rul. 56–541, 1956–2 C.B. 189, and that the revocation thereof by Rev. Rul. 61–156, 1961–2 C.B. 62, was by its terms to apply prospectively only, and contend that the respondent in the instant case is applying such revocation retroactively to their detriment. They therefore contend that the respondent's action in the instant case in denying that Armour, Inc., was properly liquidated under the provisions of sec. 337 and in determining that the petitioners did not realize long-term capital gain on receipt of the distributions in liquidation was unreasonable and arbitrary. However, we do not consider Rev. Rul. 56–541 as having been intended to establish a position that secs. 337 and 331 of the Code would apply in all situations where there is in form a sale and a liquidation without regard to whether such sale and liquidation were integral steps in a transaction constituting a reorganization. It appears to us that in issuing Rev. Rul. 56–541 the Internal Revenue Service did not consider that the facts set forth established the existence of a reorganization, but that upon further consideration it was concluded that there was a reorganization, resulting in the issuance of Rev. Rul. 61–156 which revoked Rev. Rul. 56–541. In view of the substantial difference between the facts involved in Rev. Rul. 56–541 and those involved in the instant case, the petitioners reasonably could not have concluded that Rev. Rul. 56–541 would apply in their case.

[10] In their return the petitioners reported the cost of their Armour, Inc., stock as $5,000, the amount received in the distribution as $1,121,433.76, and the gain, after deduction of certain expenses, as $1,110,123.53. The parties have stipulated that the amount received upon the distribution should be reduced by an amount of $2,520, representing the amount of a rejected claim for refund of State taxes. The gain is, therefore, reduced by that amount.

Armour, Inc., on property leased to it by the petitioners. It is the position of the petitioners that upon the cancellation of the lease this remaining unamortized cost constituted an allowable deduction (although Armour, Inc., did not claim it as a deduction and now makes no claim for it as a deduction in computing its taxable income for the taxable year ended September 30, 1959), citing *Cassatt* v. *Commissioner*, (C.A. 3) 137 F. 2d 745, and therefore reduced the accumulated earnings of that company available for the distribution of taxable dividends. While the *Cassatt* case does establish such a general rule, we cannot agree that it has been shown that that principle applies in the instant case. The lease involved in that case was not between a corporation and its stockholders and no reorganization was involved.

The expenditure by Armour, Inc., of $83,921.61 to erect the building on the leased land represented a capital expenditure, namely, the cost of the use of the building for the remaining term of the lease, which would properly be amortized and deducted over the remaining term of the lease. We have no evidence as to the date the lease was entered into, its terms, or its expiration date. It seems evident, however, that since the cost of the improvements, $83,921.61, had not been depreciated by August 1, 1959, below the amount of $70,410.46, there must have been a considerable unexpired term of the lease remaining at the time the lease was canceled. Thus, so far as the evidence shows, Armour, Inc., had a right to such use for an undetermined period, and the cancellation was a voluntary act on the part of Armour, Inc., occasioned by the reorganization which called for the liquidation and dissolution of Armour, Inc. It appears, therefore, that in effect Armour, Inc., distributed out to the petitioners the right to such use for the remaining term of the lease.[11] Such distribution would not entitle Armour, Inc., to a deduction in computing its taxable income for the taxable year ended September 30, 1959, and hence would not thereby affect the calculation of its earnings and profits available for the payment of taxable dividends.[12] The petitioners in turn leased the improved property to Excavating. We have no evidence as to the terms of such lease, and therefore do not know whether the term thereof was equal to or greater than the unexpired term of the old lease with Armour, Inc. If all the facts were presented it might

---

[11] The respondent makes no contention that in computing the gain to the petitioners upon the surrender of their stock any amount should be included in the amount received by them on account of a distribution of the right to the use of the property for the remaining term of the lease, and we do not disturb the respondent's determination in this respect.

[12] Sec. 311 of the Code sets forth the general rule that no gain or loss shall be recognized to a corporation on a distribution of property, and sec. 316 of the Code provides that the term "dividend" includes any distribution of property made by a corporation to its shareholders out of its earnings and profits of the taxable year computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year.

appear that the substance of the cancellation of the old lease and the execution of the new was merely a transfer by Armour, Inc., to Excavating of its right to the use of the improved property for the remaining term of the old lease. In such case no gain or loss would be recognized to Armour, Inc., upon the cancellation of the lease, in view of the provisions of section 361 of the Code,[13] and hence neither taxable income of Armour, Inc., nor its earnings and profits available for the payment of dividends would be affected. Thus, in any event, Armour, Inc., would not be entitled to a deduction of $70,410.46 in computing its taxable income and to a reduction of its earnings and profits available for the payment of taxable dividends.

The petitioners reported their entire gain upon the surrender of their stock of Armour, Inc., as income in their return for 1959. They now contend that their income for that year would be more accurately reflected by reducing the amount of the distribution to them in that year, and hence by reducing the amount of their gain, by any additional taxes and interest which may be determined against Armour, Inc., and which they will be required to pay as transferees. (It has been conceded that there is an additional tax of $752.81 due from Armour, Inc., for the taxable year ended September 30, 1958, but the parties have agreed that if there was a reorganization, as we have held, there is no deficiency in tax due from Armour, Inc., for its taxable year ended September 30, 1959.) A similar contention was rejected by us in *Roberta Pittman*, 14 T.C. 449, and on the authority of that case we reject the present contention. See also *United States v. Lewis*, 340 U.S. 590; and *Arrowsmith* v. *Commissioner*, 344 U.S. 6.

In the notice of deficiency the respondent determined that the entire amount of gain to the petitioners upon the exchange of their stock of Armour, Inc., constituted a taxable dividend to them from that corporation. However, at the trial and on brief the respondent advanced the contention that $457,246.22 of the amount received by the petitioners from Armour, Inc., should not be considered as having been received by them in exchange for their stock of Armour, Inc., but should be considered as an informal dividend paid to them by Excavating through Armour, Inc., as a conduit. It is his claim that Excavating depleted its assets by such amount of $457,246.22, representing the difference between the basis of the construction equipment which

---

[13] Sec. 361 provides:

SEC. 361. NONRECOGNITION OF GAIN OR LOSS TO CORPORATIONS.

(a) GENERAL RULE.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(b) EXCHANGES NOT SOLELY IN KIND.—

\*          \*          \*          \*          \*          \*          \*

(2) LOSS.—If subsection (a) would apply to an exchange but for the fact that the property received in exchange consists not only of property permitted by subsection (a) to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

it received and the amount of cash which it relinquished, $620,774.98. His reasoning is that since the basis of the construction equipment in the hands of Excavating would be the carryover basis of $163,528.76, Excavating received nothing it could use for income tax purposes (for calculation of depreciation and calculation of gain or loss) in return for the difference of $457,246.22, and that hence the assets of Excavating had been depleted by $457,246.22, thus laying the foundation for the claim that there had been a distribution of a dividend by it in that amount.

We see no merit in this contention of the respondent. The construction equipment which Excavating received had a fair market value equal to the amount of cash which Excavating relinquished. Since the cash relinquished by Excavating did not exceed the fair market value of what it received, we fail to see how it can be considered that Excavating depleted its assets and thereby paid its stockholders a dividend. Rather, Armour, Inc., transformed its construction equipment into cash equal to its fair market value and distributed that amount to its stockholders along with other property, and the gain to the petitioners upon the transaction is, as stated above, to be taxed to the petitioners as a dividend from Armour, Inc., to the extent of the earnings and profits of Armour, Inc., and as long-term capital gain to the extent it exceeds such earnings and profits.

The parties have stipulated that if it is held that there was a reorganization of Armour, Inc., the deficiency determined by the respondent against Excavating for its taxable year ended May 31, 1960, is correct.

*Decisions will be entered under Rule 50.*