T. Jack Foster, et al. v. Commissioner. [1]
Foster v. Commissioner
Docket No. 1088-64.
United States Tax Court
T.C. Memo 1967-207; 1967 Tax Ct. Memo LEXIS 54; 26 T.C.M. (CCH) 1021; T.C.M. (RIA) 67207; October 24, 1967
Roy C. Lytle, 824 Commerce Exchange Bldg., Oklahoma City, Okla., for the petitioners. J. C. Linge, for the respondent. SCOTT Supplemental Memorandum Findings of Fact and Opinion SCOTT, Judge: Certain substantive differences arose between the parties in their computations under Rule 50 submitted to the Court resulting in amendments to the pleadings being filed by the parties. Petitioners filed a motion to amend their petition which included a proposed amendment relating to loss carrybacks from years subsequent to the years here in issue. Petitioners later withdrew their motion insofar as it related to such claimed *55 loss carrybacks, thus causing the area of disagreement between the parties to center on the basis of Likins-Foster Honolulu Corporation (hereinafter referred to as Honolulu) in the stock of Likins-Foster Monterey Corporation (hereinafter referred to as Monterey) for computing gain on redemption by Monterey in the fiscal year ended June 30, 1957, of its class A stock and the basis of Honolulu in the stock of Monterey, Likins-Foster Ord Corporation, Likins-Foster El Paso Corporation, and Likins-Foster Biggs Corporation for the purpose of computing Honolulu's gain from amounts received from these corporations in the fiscal year ended June 30, 1959, after the corporations had passed resolutions of dissolution and liquidation. The difference between the parties as to the basis of Honolulu in the class A stock of Monterey for computing Honolulu's gain for the fiscal year 1957 is whether the basis of the class A and class B stock is $215,000 or $230,000. In our Memorandum Findings of Fact and Opinion, filed December 27, 1966, we stated: * * * It may be that the class B stock did not have a basis of $15,000 in addition to the $215,000 basis stipulated to be that of the class A stock, but *56 respondent has failed to show that this is a fact and therefore we hold that in prorating the reduction in basis to the various classes of stock the value of the class A stock to be used is $215,000 and the value of the class B stock is $15,000. Our conclusion as to the original basis of Honolulu in the class A and class B stock of Monterey is in accordance with our Memorandum Findings of Fact and Opinion, filed December 27, 1966. The total amount of losses of Monterey for the fiscal years ended June 30, 1954, 1955, and 1956, which were used in computing its consolidated net income with Honolulu and subsidiaries for those years is set forth in our Memorandum Findings of Fact and Opinion, filed December 27, 1966, as being in the amounts of $23,877, $78,664, and $72,090, respectively. The total of these amounts is $174,631. However, the parties apparently are in agreement in the proposed recomputations that the total of these losses is $174,631.63, and we now determine this to be the amount of such losses. In our Memorandum Findings of Fact and Opinion filed December 27, 1966, we determined that the basis of Honolulu in the stock of Monterey to be used in computing the gain by *57 Honolulu from distributions in liquidation received from Monterey in the fiscal year 1959 was zero. Petitioners in their Rule 50 computation used a basis of Honolulu in Monterey's stock, in computing gain for the fiscal year 1959 in the amount of $171,897.69 plus certain amounts representing taxes of Monterey which petitioners claimed after the entry of decision in this case Honolulu would be required to pay, an issue which will be hereinafter discussed. It is petitioners' contention that the facts as set forth in our Memorandum Findings of Fact and Opinion filed December 27, 1966, show that a greater reduction in the basis of Honolulu in Monterey's stock should be used in computing Honolulu's gain on redemption of Monterey's stock in the fiscal year 1957 than the amount of such reduction which had been claimed by respondent and determined by the Court and that the making of the adjustment reducing Honolulu's basis in the fiscal year 1957 because of previously used losses requires a contra-adjustment in the fiscal year 1959. The parties agreed that respondent might file an amendment to his amended answer claiming the increased deficiency resulting from the decrease in Honolulu's basis *58 in Monterey's stock for computing Honolulu's gain upon redemption of such stock in the fiscal year 1957 and that petitioners might file an amended petition claiming the reduction in Honolulu's tax in the fiscal year 1959 resulting from using as Honolulu's basis in Monterey's stock the amount petitioners claimed to be the proper amount for computing Honolulu's gain for that year. Such amendment to amended answer and amended petition were filed. It is petitioners' position that the following provisions of section 1.1502-34A(a), (b)(1) and (2), and (c)(1) and (2), Income Tax Regulations, support their method of determining Honolulu's basis in Monterey's stock for the purpose of computing the gain of Honolulu from the amount received as a liquidating distribution from Monterey in the fiscal year 1959: Section 1.1502-34A Sale of stock; basis for determining gain or loss. (a) Scope of section. This section prescribes the basis for determining the gain or loss upon any sale or other disposition (hereinafter referred to as "sale") by a corporation which is (or has been) a member of an affiliated group which makes (or has made) a consolidated return for any taxable year, of any share of *59 stock issued by another member of such group (whether issued before or during the period that it was a member of the group and whether issued before, during, or after the taxable year 1929), and held by the selling corporation during any part of a period for which a consolidated return is made or required under the regulations under section 1502. * * * (b) Sales made while selling corporation is member of affiliated group. If the sale is made within a period during which the selling corporation is a member of the affiliated group, whether or not during a consolidated return period, and whether or not, as a result of such sale, the issuing corporation ceases to be a member of the group, the basis shall be determined as follows: (1) The aggregate bases of all shares of stock of the issuing corporation held by each member of the affiliated group (exclusive of the issuing corporation) immediately prior to the sale, shall be determined separately for each member of the group, and adjusted in accordance with the other provisions of subtitle A of the Code, but without regard to any adjustment under the last sentence of section 1051 relating to losses of the issuing corporation sustained *60 by such corporation after it became a member of the group. (2) From the combined aggregate bases as determined in subparagraph (1) of this paragraph, there shall be deducted the sum of - (i) All losses of such issuing corporation sustained during taxable years for which consolidated income tax returns were made or were required (whether the taxable year 1929 or any prior or subsequent taxable year) after such corporation became a member of the affiliated group and prior to the sale of the stock to the extent that such losses could not have been availed of by such corporation as net loss or net operating loss in computing its net income or taxable income, as the case may be, for such taxable years if it had made a separate return for each of such years, * * *
reduced by any losses of the issuing corporation approtioned under this section to its stock sold or otherwise disposed of in a prior transaction, disregarding any transaction between members of the affiliated group during a consolidated income or excess profits tax return period which did not constitute a partial liquidation of the issuing corporation. * * *
(c) Sales after selling corporation has ceased to be *61 member of affiliated group. If the sale is made after the selling corporation has ceased to be a member of the affiliated group, such basis shall be determined in accordance with paragraph (b) of this section, except that - (1) The aggregate basis (under paragraph (b)(1) of this section) shall be determined for all shares of the issuing corporation held by each member of the group immediately prior to the time the selling corporation ceased to be a member of the group (rather than immediately prior to the sale); (2) The reduction (under paragraph (b)(2) of this section) with respect to losses apportioned to stock sold or otherwise disposed of in prior transactions shall be determined without regard to the transaction which terminated the affiliation and all subsequent transactions; * * *
Petitioners interpret the provision, "The aggregate bases of all shares of stock of the issuing corporation held by each member of the affiliated group * * * immediately prior to the sale * * * shall be * * * adjusted in accordance with the other provisions of subtitle A of the Code * * *" to require starting with an $11,900 basis of Honolulu in Monterey's stock as of the year 1959, which *62 represents the amount they consider to be the portion of a $15,000 original basis of Honolulu in Monterey's class B stock which is not applicable to the stock transferred in February 1958 when Monterey ceased to be a part of the affiliated group entitled or required to file consolidated returns. Petitioners then state that under the provisions of paragraph 1.1502-34A(b)(2) there is no amount or zero amount of losses of such issuing corporation sustained during taxable years for which consolidated income tax returns were made that "could not have been availed of by such corporation as net loss or net operating loss in computing its net income * * * if it had made a separate return for each of such years," since Monterey's income computed in accordance with the opinion of this Court was sufficient for the fiscal year 1958 and for that portion of that year prior to February 1958 when it ceased to be a part of the consolidated group to have offset all of its prior losses both separate and those previously used by the consolidated group. Petitioners state that, therefore Honolulu's original basis in Monterey's stock is to be reduced by zero minus any "losses of the issuing corporation apportioned *63 under this section to its stock sold or otherwise disposed of in a prior transaction, * * *." Petitioners state this results in the amount to be subtracted from $11,900 being a minus amount, which requires that the $11,900 be increased by such amount. We stated in our Memorandum Findings of Fact and Opinion, filed December 27, 1966, as follows: In connection with the allocation between class A and class B stock of losses availed of by Monterey which would not have been available to it except for the filing of a consolidated return, we put a basis of $15,000 on the class B stock of Monterey from a balance sheet figure appearing in the record. We took this balance sheet figure because of the fact that respondent had the burden of proof and had not shown that this amount did not represent Honolulu's basis in the stock. However, in the instant case respondent determined that the full $888,576.13 was taxable to Honolulu as a liquidating distribution and therefore the burden of showing that a lesser amount is taxable to Honolulu is on petitioners. We do not consider the facts in this case to be sufficient to show that Honolulu's original basis in the class B stock of Monterey was $15,000, *64 or if such were the original basis, what portion of such original basis should be allocated to the portion of Monterey's stock which Honolulu disposed of in its fiscal year 1958 when Monterey ceased to be a member of the consolidated group. We therefore conclude that Honolulu's original basis in Monterey's stock to be used for the purpose of computing Honolulu's gain from the distribution received by it from Monterey in the fiscal year 1959 is zero. However, if an original basis of zero is used for the class B stock, it is still necessary to determine whether petitioners are correct that the zero basis should be reduced by zero minus the amount of the 1957 adjustment so that the basis in 1959 is the amount by which the 1957 basis was reduced. The purpose of the regulation requiring the adjustment for previous losses used by the consolidated group which could not have been used by the member of the consolidated group if that member had filed separate returns is to avoid a double use of losses and the purpose of, in effect, restoring prior apportioned losses is not to have an adjustment which results in effect in denial of one use of such losses. Here the income of Monterey for the *65 portion of the year it was a member of the consolidated group in the fiscal year 1958 in accordance with our Memorandum Findings of Fact and Opinion, filed December 27, 1966, is approximately $600,000. Therefore, it had sufficient income in this year to use its approximately $112,000 of separate losses, the approximately $174,000 of its losses used by the consolidation in prior years, and the approximately $49,000 loss in the fiscal year 1957. Therefore, there were not as of the time in 1958 when Monterey was removed from the consolidated group any losses for any prior year which it could not have used if it had filed separate returns. Therefore, in 1959 it is necessary to correct for an adjustment made in 1957 when circumstances were different in this respect. This correction results in the basis of Honolulu in the stock of Monterey in the fiscal year 1959 being the same amount as the reduction in Honolulu's basis in Monterey stock in the fiscal year 1957 computed under section 1.1502-34A(b)(2) of respondent's regulations. In our Memorandum Findings of Fact and Opinion, filed December 27, 1966, we stated with respect to petitioners' contention that there were liabilities of Likins-Foster *66 Ord Corporation, Likins-Foster Biggs Corporation, Likins-Foster El Paso Corporation, and Monterey which should be used to reduce the distributions by those corporations to Honolulu before computing any gain to Honolulu in its fiscal year 1959 from such distributions, as follows: * * * If at some later date it were determined that some liability did exist which Honolulu was required to pay, the amount would be a capital loss to Honolulu in a later year. Arrowsmith v. Commissioner, 344 U.S. 6 (1952). If petitioners had in mind some liability of Honolulu as a transferee for income taxes of the Wherry corporations, the amounts would not be proper reductions of the distributions but any adjustment would be made in Honolulu's income in the year that the liability for such taxes is determined or paid. James Armour, Inc., 43 T.C. 295, 312 (1964). Petitioners argue that since Honolulu is not only liable as a transferee of its former subsidiaries but also because for some years prior to the fiscal year 1959 it filed consolidated returns with these affiliates, the holdings in Arrowsmith v. Commissioner, 344 U.S. 6 (1952), and James Armour, Inc., 43 T.C. 295 (1964), *67 are inapplicable. Any deficiencies in tax which may be determined when the decision of this Court is entered with respect to Monterey and other "Wherry" corporations which Honolulu is required to pay are not a liability which is finally determined until the decision of this Court is entered. It was because such liability was not fixed or paid until a later year, and not merely because the liability was a transferee liability, that formed the basis of the holding in Arrowsmith v. Commissioner, supra, and in James Armour, Inc., supra, that the deduction should be taken in the later year. Therefore under the holdings of these cases, Honolulu is not entitled to deduct any amounts of the liabilities of the "Wherry" corporations which it may ultimately be called upon to pay until they are either finally determined or paid. In effect, Honolulu is attempting to obtain a deduction for the yet undetermined taxes of the "Wherry" corporations which it may eventually be called upon to pay by reducing its gain from liquidating distributions from such corporations in the fiscal year 1959 by the yet undetermined amounts. An appropriate order will be entered in Docket No. *68 1088-64. Footnotes
1. Memorandum Findings of Fact and Opinion filed December 27, 1966, involved this and other dockets that were consolidated. This Supplemental Memorandum Opinion involves only Likins - Foster Honolulu Corp., et al., Docket No. 1088-64. ↩