FEC LIQUIDATING CORP., etc.

v.

The UNITED STATES.

No. 201–75.

United States Court of Claims.

Jan. 26, 1977.

---

Arnold Fisher, Newark, N. J., attorney of record for plaintiff. David W. Mills and Lowenstein, Sandler, Brochin, Kohl & Fisher, Newark, N. J., of counsel.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant; Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before SKELTON, NICHOLS and KUNZIG, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

Plaintiff sues to recover the Federal income taxes it paid upon gains realized from its sale of two blocks of Whittaker Corporation common stock, which plaintiff had acquired in exchange for its assets. Both parties move for summary judgment on plaintiff's counts one and four, relating to its entitlement to the refund. Plaintiff's other counts are not the subject of the motions before the court, nor the subject of this opinion. Since we grant defendant's motions for summary judgment, however, we dismiss the portion of the petition that is affected.

The facts material to these motions are undisputed. On September 15, 1967, Whittaker Corporation executed an Acquisition Agreement and Plan of Reorganization, qualifying for tax-free treatment under §§ 361 and 368(a)(1)(C) of the Internal Revenue Code. Under the Agreement, plaintiff's predecessor, Fanon Electronics Industries, Inc., promised to transfer substantially all of its assets to a Whittaker subsidiary in exchange for Whittaker common stock and Whittaker's assumption of certain of plaintiff's liabilities. Fanon, however, had to pay certain creditors and purchase outstanding warrants against its stock. On December 14, 1967, plaintiff's Board of Directors adopted a Plan of Complete Liquidation. Both the reorganization and liquidation plans contemplated, first, that plaintiff would sell that portion of its newly acquired stock in Whittaker as was necessary to obtain sufficient funds to purchase the outstanding warrants, and second, that plaintiff would proceed to liquidate and dissolve, distributing to its shareholders the balance of the Whittaker stock. The liquidation plan further provided that dissolution would be completed within twelve months. Three days after the Board's action, plaintiff and Whittaker consummated the reorganization exchange, and plaintiff immediately sold for cash 4,500 common shares of Whittaker. On January 10, 1968, plaintiff sold 1,276 additional shares. In computing its tax returns for the periods including these sales, plaintiff included in gross income the gain it realized on the sales of Whittaker stock and paid the appropriate tax. Now, after proper claims for

refund, plaintiff contends that these gains need not have been recognized, by operation of § 337 of the Internal Revenue Code, and that it is entitled to a refund of the tax paid, plus statutory interest.

Section 337, on which plaintiff rests its claim, provides, in general, that if a corporation adopts a plan of "complete liquidation," it shall not recognize any gain or loss on sales of its property made during the next twelve months if by the end of that period it has distributed to its shareholders all of its net assets. We do not have here, as in *Ross Michael Simon Trust v. United States,* 402 F.2d 272, 185 Ct.Cl. 291 (1968), the common controversy whether transactions are liquidations or reorganizations. The parties agree that plaintiff's reorganization plan qualifies under § 361. With respect to § 337, defendant concedes only that plaintiff met the literal requirements of the statute, in adopting a plan that could have been characterized as providing for complete liquidation, and distributing the assets within twelve months. Defendant then recalls the well-known rule that a taxpayer's literal compliance with statutory criteria will not of itself entitle the taxpayer to the desired tax treatment if, in a broad view, that result contravenes an underlying tax policy. This much plaintiff concedes, at least in theory. The issue is joined when defendant objects to plaintiff's effort to invoke both §§ 337 and 361 to the same transaction, because, in defendant's view, corporate liquidations and corporate reorganizations are mutually exclusive, virtually by definition.

Defendant finds its support in a comment by Professors Bittker and Eustice, the recognized gurus of the corporate tax field, that the reorganization sections preempt § 337 from a transaction deemed to be reorganization rather than a liquidation, and moreover, that § 337 is ousted of jurisdiction even over sales of assets to "outsiders" in a liquidation occurring in the course of a reorganization. B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 11.68 at 11–78 (1971). Bittker and Eustice draw this con-

clusion from or, at any rate, cite, a series of Tax Court decisions denying liquidation treatment to shareholders who liquidate their corporations shortly before reincorporating the operating assets in a separate but related corporation. *E. g., Werner Abegg,* 50 T.C. 145 (1968); *Ralph C. Wilson,* 46 T.C. 334 (1966). *See also, e. g., Davant v. Commissioner,* 366 F.2d 874 (5th Cir. 1966); *James Armour, Inc.,* 43 T.C. 295 (1964). The Tax Court characterized the whole transaction in each of these cases as a reorganization, and not a liquidation in substance, and prevented the taxpayers from extracting from corporate solution the liquidated corporation's earnings and profits at only the cost of a capital gains tax. *Id.* Defendant generalizes from these cases that corporate liquidations and corporate reorganizations cannot co-exist for tax purposes, and that hybrid transactions are taxed as reorganizations. Defendant explains that the cornerstone of a qualifying corporate reorganization is the shareholders' continuing their interest in the transferred business enterprise, although through a different corporate form, while a corporate liquidation occurs when the shareholders surrender their interests in the business and disassociate themselves from it. Insofar as the concept of continuity of interest is logically incompatible with the idea of shareholder disengagement from the business, defendant argues, any given transaction may be either a reorganization or a liquidation, but never both.

Plaintiff, on the other hand, denies that the concurrent operation of §§ 337 and 361 offends any tax policy. Sharing defendant's homing instinct, plaintiff also seeks support in Bittker and Eustice's treatise but, predictably, in a passage of its own choosing:

> If the transferor corporation is required to recognize gain on the disposition of part of its assets, * * * because * * * part of its assets are sold to persons other than the acquiring corporation, is it nevertheless possible to claim the nonrecognition benefits of § 337 with respect to this gain * * *? Use of § 337 to obtain non-recognition for gains

realized on dealings with outsiders in the context of a reorganization cum liquidation of the transferor does not seem to be prohibited by any express provisions of the statute or by any compelling reasons of policy. Priority of the reorganization rules is probably justified where gain would be recognized under § 361, absent applicability of § 337, since § 337 ought not to be allowed to function as a backstop to § 361 where the two conflict; but nonrecognition of gain under § 337 from sales to outsiders (even though effected as part of the overall plan of reorganization) does not seem to be incompatible with the provisions of § 361, whose focus is on dealings between the transferor corporation and the acquiring corporation. Even so, however, the [Internal Revenue] Service * * * and the courts have so far denied use of § 337 to a corporation that is also subject to the jurisdiction of § 361. [Footnotes and citations omitted.]

B. Bittker & J. Eustice, *supra,* ¶ 14.32 at 14–81. Here again, as authority for the last sentence, the authors cite several of the liquidation-reincorporation cases already discussed. Plaintiff's quote seems best explained as putting forward a personal view of the authors which they concede is not supported by authority. Plaintiff distinguishes these cases from the facts before us today, on the ground that each case involved an eventual transfer of assets between two corporations controlled by the same shareholders. In economic effect, the shareholders that possessed control over the assets at the outset maintained control at the end, even though title to the properties may have been transferred between their related corporations. On those facts, plaintiff concedes that it would be proper to disregard a purported liquidation as a sham, and recast the whole transaction as a reorganization under §§ 368(a)(1)(D) or (F), as the Tax Court did. Yet, the same approach is inappropriate to its own reorganization under § 368(a)(1)(C), plaintiff reasons, because its shareholders relinquished control of the assets as title to them was transferred. Nor is there any suggestion here that any aspect of the transaction was a sham.

Plaintiff concludes, therefore, that since it met the statutory requirements of § 337, it is entitled to benefit therefrom.

Plaintiff argues cogently, and the distinction it draws between the reincorporation situation and the present facts is well-taken. We agree with plaintiff that the holdings defendant cites do not control on their facts. We cannot base our decision in this case solely on their authority. Still, they furnish us some guidance, for they addressed just another aspect of the general problem before us now, how to distinguish a corporate reorganization from a liquidation. One characteristic common to these cases, as well as others where the courts examined a taxpayer's transaction for this purpose, is the either-or nature of the inquiry: the transaction is taxed *either* as a liquidation *or* a reorganization, never both. This also seems to have been our court's unstated premise in deciding *Mitchell v. United States,* 451 F.2d 1395, 196 Ct.Cl. 694 (1971), and in *Ross Michael Simon Trust, supra.* Defendant's theory that these two types of transactions are conceptually incompatible aptly rationalizes the results both in *Mitchell* and the reincorporation cases. This is the core of this dispute; since defendant persuades us on this point, it must prevail.

As we see it, a corporate reorganization occurs where the owners of a business retain a proprietary interest in it as the enterprise continues under a modified corporate form. *Mitchell v. United States,* 451 F.2d at 1397, 196 Ct.Cl. at 699, quoting Treas.Reg. § 1.368–1(b) (1955). Accordingly, the tax significance of plaintiff's receiving Whittaker Corporation common stock in exchange for its assets to establish its continuity of interest in the business thereafter conducted by the Whittaker organization. As new stockholders in Whittaker, the former plaintiff's stockholders may not have been in control but we presume they shared in control to the extent their voting rights empowered them. The plaintiff states in its brief they soon sold most of their Whittaker stock. This was not part of the plan, but the individual decisions of the stockholders. If, instead of accepting the stock,

plaintiff had received cash or otherwise relinquished its proprietary stake in the business, the transaction would not have qualified as a reorganization for tax purposes. *Cf. Southwest Natural Gas Co. v. Commissioner*, 189 F.2d 332 (5th Cir. 1951), *cert. denied*, 342 U.S. 860, 72 S.Ct. 88, 96 L.Ed. 647. That form of transaction might possibly have constituted a liquidation, however, if plaintiff then distributed the cash received to its shareholders, inasmuch as a liquidation is analogous to the shareholders' selling their stock and receiving money in its place. *Pridemark, Inc. v. Commissioner*, 345 F.2d 35, 41 (4th Cir. 1965). Thus, a complete liquidation, as the tax law knows it, involves either the dissolution of a business conducted in corporate form, or the planned disassociation of the shareholders from the business if the enterprise continues. *See* Treas.Reg. § 1.332–2(c) (1955). We note here, for future reference, that the definition focuses on the future conduct of the *business* enterprise rather than on any technical corporate procedure, such as dissolution under state law.

The facts of the present case leave no doubt that plaintiff's exchange of assets for stock was, as intended, a reorganization in purpose and effect. It seems obvious that the sale of a part of the corporate assets to outsiders, incident to larger transactions of other kinds, liquidates those assets but is not a "complete liquidation."

The Tax Court remarked in *Morley Cypress Trust*, 3 T.C. 84 (1944), that it knew of no rule requiring that an otherwise qualifying reorganization be disqualified because it occurred in the progress of a liquidation. *Id.* at 86. We have no quarrel with what the Tax Court said, for we, too, are unaware of any such rule as the one there repudiated. Our decision today confirms this, insofar as we hold that a reorganization occurring while plaintiff liquidated lost none of its vitality to control the tax consequences. We disagree, though, with plaintiff's contention that the Tax Court's statement contradicts our reasoning and we think that any differences are semantic. The term "complete liquidation" is a term of art in tax law, apart from its meaning in corporate law contexts. The same is true of the term "reorganization," defined for tax purposes in § 368. Not every change in corporate form that might fall within the generic meaning of reorganization qualifies for tax treatment as such. Nor does every corporate dissolution under state law qualify as a complete liquidation for tax purposes; conversely, the tax law may recognize a liquidation even though the corporate form survives under state law. Treas.Reg. § 1.332–2(c) (1955). We think that the liquidation that the Tax Court referred to in *Morley Cypress Trust* was a liquidation under local law, which has no direct bearing on the tax consequences.

Accordingly, we grant defendant's motion for summary judgment on counts one and four, deny plaintiff's motion, and dismiss those counts of the petition.