**GENERAL HOUSEWARES
CORPORATION,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 78–1241.

United States Court of Appeals,
Fifth Circuit.

April 23, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Jonathan S. Cohen, Richard Farber, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Sirote, Permutt, Friend & Friedman, Allan J. Chappelle, Robert B. Eubank, Birmingham, Ala., for plaintiff-appellee.

Before THORNBERRY, GODBOLD, and TATE, Circuit Judges.

TATE, Circuit Judge:

This is a taxpayer's suit to recover a refund of an internal revenue tax erroneously assessed and collected. 28 U.S.C. § 1346(a)(1). The issues in this case and the facts relating thereto are identical to those in another appeal arising out of a suit by other taxpayers involving the same transactions. *Sellers v. United States*, 615 F.2d 1066. These cases were decided simultaneously below, and this opinion decides issues common to both suits.

The questions before us involve the application and construction of several sections of the Internal Revenue Code of 1954, Subtitle A–26, Income Taxes, 26 U.S.C. §§ 1–1552. A corporation was reorganized through the exchange of all its assets for the stock of another company, section 368(a)(1)(C), I.R.C., and then this corporation was liquidated and the stock so received distributed to its shareholders. We

affirm the district court's determination that the corporation itself may be accorded the tax-free consequence of a complete *liquidation* under section 337, while at the same time its shareholders receive the favorable tax consequences accorded to a distribution or exchange resulting from a corporate *reorganization* under sections 354 and 356. However, as to a further issue— whether the cash "boot" received by shareholders as a result of the liquidation-reorganization is taxable as a capital gain or instead as ordinary (dividend) income under section 356—we hold the boot to be taxable as dividend income, reversing the district court. The government appeals from a judgment in favor of the taxpayer. Except for the minor modification noted (which does not affect the present refund herein awarded by the trial court), we affirm.

*The Facts and Issues*

The issues before us concern the 1969 income tax liability of Olivier Company, Inc. (Olivier) and its shareholders for certain 1969 transactions accomplished in the process of (a) a plan of complete liquidation adopted by Olivier and (b) a plan of reorganization between Olivier and U. S. Industries (USI), another corporation. The plans are dated respectively November 1 and November 4, 1968. At the time of these transactions and Olivier's liquidation, two-thirds of Olivier's stock was owned by Plantation Patterns, Inc. (Plantation) and the remaining one-third by William D. Sellers, Jr.

In executing these plans, three basic transactions occurred:

1. Pursuant to the plan of reorganization, Olivier transferred its only asset (stock in a third corporation) to USI in exchange for 142,494 shares of USI stock. This exchange is conceded to be a tax-free step, under section 361(a), in a statutorily-recognized "C" reorganization pursuant to section 368(a)(1)(C),[1] whereby one corporation

---

1. For federal income tax purposes, corporate "reorganization" has a technical meaning. It is defined by section 368(a)(1); sub-paragraphs (A) through (F) define six (and only six) forms of corporate adjustments recognized for favor-

able "reorganization" tax treatment. They are identified by tax specialists by the alphabetical subsection defining each. For instance, a "C" reorganization is the exchange of substantially all of the assets of one corporation solely for

acquires substantially all of the property of another corporation in exchange solely for the acquiring corporation's voting stock.

2. Pursuant to its plan of liquidation, Olivier then sold 34,000 shares of USI stock, approximately 25% of the shares received in the above exchange, for slightly over one million dollars. The total gain realized on the sale of this stock was $691,330.50.[2] (Gain is the difference between the amount received by the corporation and the corporation's basis in the asset(s) sold, and the basis essentially represents the original cost of the asset(s) to the corporation. See note 1, *supra*.) The chief issue of this appeal (see part I, *infra*) is whether Olivier was liable for tax on this gain, as the government contends, or whether instead the gain was the tax-free result of a sale of property by a corporation in the process of a plan of complete liquidation under section 337.

3. Pursuant to its plans of both liquidation and reorganization, Olivier then distributed all of its assets to its shareholders, Plantation and Sellers, in proportion to their stock ownership in Olivier (Plantation, ⅔; Sellers, ⅓). After Olivier's pay-

ment of its liabilities (see note 2, *supra*), these assets consisted of slightly less than one hundred thousand dollars in cash and 108,314 shares of USI stock, which had a fair market value slightly in excess of one million, one hundred thousand dollars.[3] As a result of this distribution, Plantation owned four-tenths of one percent (.4%) of the outstanding USI stock, while Sellers owned two-tenths of one percent (.2%). The subsidiary issues of this litigation concern the income tax liability of Plantation and Sellers at the shareholder level for this distribution of stock and cash. (See parts II and III, *infra*.)

The present taxpayer's suit is brought by General Housewares Corp., as successor in interest to Plantation by merger, to recover 1969 income taxes allegedly erroneously assessed and collected against Plantation as transferee of Olivier.[4] The companion suit, *Sellers v. United States*, in which the appeal is also being decided today, was brought by Sellers and his wife to recover 1969 income taxes erroneously collected against them on several grounds.[5] In this opinion, we will

voting stock in another, while an "A" reorganization is a statutory merger or consolidation. Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 14.10 (4th ed. 1979).

The underlying assumption of the tax-free reorganization provisions is that the new property is substantially an unliquidated continuation of the old investment; therefore, any gain or loss realized is not recognized for tax purposes at the time of the exchange. *Id.* at

¶ 14.01. However, the gain or loss that was not recognized at the time of the exchange will be recognized when and if the taxpayer liquidates his investment. *Id.*

2. Olivier used the bulk of the proceeds from the stock sales to pay its debts and expenses, in preparation for its liquidation and in adherence to its plan of complete liquidation and dissolution.

3. The exact figures of the distribution were:

| Stockholder | Cash | Shares of Stock | Fair Market Value of Stock | Total Distribution |
|---|---|---|---|---|
| Wm. D. Sellers, Jr. | $32,667.76 | 36,105 | $368,964.82 | $401,636.33 |
| Plantation Patterns, | $65,336.50 | 72,209 | $737,940.71 | $803,272.66 |

4. In its 1969 tax return, Olivier did not report the gain it had received on its sales of USI stock, claiming its tax-free nature on the basis of section 337. The Internal Revenue Service concluded that section 337 did not apply and, consequently, determined a deficiency in Olivier's income tax, which was assessed against and paid by Plantation and Sellers as transferees admittedly liable for any deficiency in Olivier's taxes.

5. In addition to the tax liability of Olivier at the corporate level that is sought to be enforced against Plantation and Sellers as transferees, the government contends that the cash received by Plantation and Sellers at the shareholder level was taxable to them as ordinary income under section 356(a)(2) rather than as capital gains, and the I.R.S. assessed and collected a deficiency on this basis against Sellers. This allegedly erroneous assessment is one ba-

discuss the issues common to both suits,[6] which were decided in favor of the taxpayers by the district court in consolidated proceedings.[7]

On appeal, the government's principal contention is that the taxpayer-favoring provisions relating to a complete corporate liquidation cannot apply when the liquidation is an integral step of a corporate reorganization. The government argues that the continuity of proprietary interest required for the taxpayer-favoring reorganization provisions, Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 14.11 (4th ed. 1979), is conceptually incompatible with a "complete liquidation," which (in general terms) requires the cessation of all business at the corporate level and the distribution to the stockholders of all the corporation's assets remaining after payment of its debts, Bittker & Eustice, ¶ 11.02. (The first two issues raised by the government on appeal, parts I and II, *infra*, reflect its basic position that a liquidation reorganization might possibly be a "liquidation" *or* a "reorganization" but cannot be both.)

The issues presented by the government's appeal are:

I. With regard to gain realized by Olivier from its sale of the USI stock that it had received in exchange for its assets pursuant to the Olivier-USI plan of reorganization, is this gain at the corporate level tax-free under section 337 as the result of a sale made in the process of a complete liquidation pursuant to a corporation's plan therefor?

II. Alternatively, if section 337 *does* apply to Olivier at the corporate level, may Olivier's stockholders avail themselves of provisions applicable only to a corporate *reorganization* so as to escape immediate tax liability at the shareholder level on the proceeds (stock and cash) received by them through the corporate distribution made during the course of a *liquidation*?

III. In any event, is the cash "boot" received by the shareholders taxable only as a capital gain under section 356(a), as the district court held, or should it instead be treated under the circumstances as having "the effect of the distribution of a dividend" under section 356(a)(2) so as to be taxable as ordinary income?

I.

Section 337 essentially provides that no gain or loss to a corporation is recognized on the sale or exchange of assets by it during a 12-month period following its adoption of a plan of complete liquidation, if at the end of such 12-month period all of its assets have been distributed in complete liquidation.[8] This innovation in the 1954 codification has been characterized as "one

---

sis for the companion suit decided this date. *Sellers v. United States*, 615 F.2d 1066.

With regard to Plantation's tax liability for the cash "boot," the I.R.S. did not timely assess a deficiency contesting its characterization of this distribution as a long-term capital gain. The government initially contended, however, that it was entitled to an offset on this basis, should any refund on behalf of Plantation be affirmed. Nevertheless, this issue is no longer contested insofar as Plantation is concerned (see part III, *infra*).

**6.** The opinion in the companion appeal will decide an issue affecting Sellers alone.

**7.** Although separate suits were brought by each taxpayer and allotted to different judges of the U. S. District Court, Northern District of Alabama, the refund claims were consolidated for the purpose of resolving common issues of law and fact. See *General Housewares Corp. v. U. S.*, 78–2 U.S.T.C. ¶ 9693 (N.D.Ala.1977)

(Judge Guin); *Sellers v. U. S.*, 79–1 U.S.T.C. ¶ 9202 (N.D.Ala.1977) (Judge Hancock).

**8.** Section 337(a), I.R.C., as initially enacted and during the 1969 tax year, provided:

General Rule.—If

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

In 1976 subsection (a) was slightly revised in wording but not in substance by section 1901(a)(46), Pub.L.No. 94–455, 26 U.S.C. § 337(a) (1976).

of the most important 1954 changes in the corporate provisions of the Internal Revenue Code." Bittker & Eustice, ¶ 11.63, at 11–64.

The government concedes that, according to its literal terms, section 337 applies to the sale of the USI stock by Olivier during its complete liquidation within 12 months, pursuant to its plan. The taxpayer does not dispute that except for this provision's application to a sale made by a corporation during the process of a complete liquidation, no provision of the I.R.C. would exempt from taxation the gain thus realized by Olivier. Nor does the government seriously contend that any other provision of the Internal Revenue Code expressly precludes the application of section 337 or expressly requires a different treatment of this stock sale made during the course of Olivier's complete liquidation.

Rather, the government-appellant points out that the liquidation was an integral step in a Code-recognized "C" reorganization under section 368(a)(1)(C) (see note 1, *supra*), with certain statutory consequences favorable to shareholders under sections 354 and 356 with regard to distributions received by them during the course of reorganization. The government then contends that a complete liquidation is conceptually incompatible with a reorganization; it notes that a complete liquidation involves the consequent *termination* (through the distribution of assets) of the shareholders' investment in corporate form, while a reorganization is fundamentally a *continuance* of the shareholders' proprietary interest in a continuing enterprise with a modified corporate form.

The reorganization and liquidation provisions provide differing tax advantages to the taxpayer, based upon the provisions' functional differences. For instance, liquidating distributions to shareholders of corporations are treated as payments in exchange for the stock, section 331, and thus

ordinarily produce an immediately recognized gain or loss, Bittker & Eustice, ¶ 11.03. On the other hand, a distribution to shareholders of stock or securities in corporate parties to a reorganization ordinarily does not result in then-recognized gain or loss, section 354; there is merely a substituted basis for the distribution received, section 358, so that any gain or loss will not be recognized unless or until the taxpayer liquidates his investment. See Bittker & Eustice, ¶¶ 14.01, 14.34. Thus, the government argues, section 337 relating to complete liquidations cannot apply to a corporate liquidation that occurs only as an integral step in a corporate reorganization, because this would afford the corporation a tax-free liquidation benefit while at the same time allowing the shareholders a reorganization tax benefit with regard to the proceeds received as a result of the liquidation-reorganization.[9]

In arguing that the jurisprudence has interpreted the liquidation and the reorganization provisions of the I.R.C. as mutually exclusive in application, the government relies upon the holding to that effect in *FEC Liquidating Corp. v. United States,* 548 F.2d 924 (Ct.Cl.1977), the only reported decision previous to the present case that addresses the precise issue we are called upon to decide. The government also relies upon certain decisions in which a reorganizing corporate taxpayer has been denied the benefits of section 337 for transactions accomplished as part of a liquidation incident to a corporate reorganization. In finding that the liquidation and reorganization provisions were mutually inconsistent and that therefore sections 337 (liquidation) and 368(a)(1)(C) (reorganization) could not concurrently apply to a reorganization similar to the present, *FEC Liquidating Corporation* essentially held that the "continuity of interest" requisite for a tax-free reorganization excluded a "complete liquidation,"

---

**9.** The government also contends that, construing the relevant provisions as a whole, the liquidation and the reorganization provisions are also statutorily intended to be mutually exclusive. This contention is founded upon an alleged statutory implication arising from the differing tax treatment at the shareholder level for distributions received as a result of liquidations, section 331(a), as compared with the treatment of distributions received in reorganizations, sections 354, 356. We address this contention in part II of our opinion, *infra.*

which for tax purposes requires the planned disassociation of the shareholders from the business if the enterprise continues.

In the instant case, the district court did not find *FEC* persuasive. In its scholarly and well-reasoned opinion, the trial court extensively analyzed the case law.[10] After considering the legislative intent reflected by section 337, it concluded that section 337 applied under present circumstances and that the decisions relied upon by *FEC Liquidating Corporation* (and by the government now) concerned functionally distinguishable situations. We agree with the district court's analysis and its conclusions. Without repeating the district court's detailed examination of the authorities relied upon, we likewise conclude that the liquidation and reorganization provisions are not mutually exclusive. With respect to the government's contentions before us, we agree with the district court, for the reasons stated below, that:

(a) the continuity-of-interest requirement for a corporate reorganization to receive favorable reorganization tax-consequences differs from the test applied to a continuing shareholder interest to determine whether a liquidation is "incomplete" (a test used to inhibit tax-avoidance under section 337 in liquidation-reincorporation transactions); and

(b) the I.R.C. itself recognizes that the liquidation and reorganization provisions may currently apply in the absence of conflict between a liquidation provision and a reorganization provision that *does* apply to the transaction.

## A. *"Continuity-of-interest" requirements for differing tax consequences*

■ To reiterate the context of the issue before us: the Olivier-USI plan met the requirements of a statutorily-recognized "C" reorganization pursuant to section 368(a)(1)(C), and the favorable reorganization tax-consequences were thus available. In addition, the Olivier sale of USI stock during Olivier's plan of liquidation literally met the requirements of section 337; therefore, no taxable corporate gain is recognized if that section applies. Further, no reorganization or liquidation provision of the I.R.C. conflicts with the application of section 337 to the sale during Olivier's liquidation. The issue we are thus called upon to decide is: Are the tax-consequence-free benefits of section 337 available with respect to a sale made by a corporation to third persons during its liquidation, when that liquidation is a step in a "C" reorganization?[11]

The government attacks the application of section 337 to this sale (and insists that the corporate gain should be recognized) on the theory that a liquidation (cessation of business; termination of shareholders' interest) is conceptually incompatible with a reorganization (continuance of business; continuity of shareholders' interest). The government's argument is primarily based, as was the decision in *FEC Liquidating Corporation*, upon expressions and holdings in several judicial decisions, none directly involving the issue before us.[12] These deci-

10. *General Housewares Corp. v. United States*, 78–2 U.S.T.C. ¶ 9693 (N.D.Ala.1977). We are also indebted to a perceptive and comprehensive analysis of the issues before us by Austin, The Applicability of Section 337 to Sales to Third Parties in a "C" Reorganization: The *FEC Liquidating* and *General Housewares* Decisions, 66 Calif.L.Rev. 623 (1978), as well as to the excellent critique of the *FEC* decision in Lokey, Section 337 Sales as Part of Reorganizations: A Closer Look at *FEC Liquidating Corp.* and the Meaning of "Complete Liquidation," 31 Vand.L.Rev. 639 (1978).

11. A "C" reorganization is accomplished through the exchange of substantially all the assets of one corporation solely for voting

stock in another corporation. Section 368(a)(1)(C). A "C" reorganization does not require the liquidation of the acquired corporation (which may remain in existence as a holding company), Bittker & Eustice, ¶ 14.14 at 14–50 to –51, but in the more usual situation the acquired corporation is liquidated. *Id.* at ¶ 14.14.

12. *Abegg v. Commissioner*, 429 F.2d 1209 (2d Cir. 1970), cert. denied, sub nom. Cresta Corp., S.A. v. *Commissioner*, 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971); *Liddon v. Commissioner*, 230 F.2d 304 (6th Cir. 1956); *Lewis v. Commissioner*, 176 F.2d 646 (1st Cir. 1949); *Telephone Answering Service Co. v. Commis-*

sions have denied liquidation treatment to the distribution of assets to shareholders who liquidate their corporations shortly before reincorporating the operating assets in a separate corporation in which they own a substantial interest, usually in a liquidation made as an integral part of a corporate reorganization with reorganization tax advantages likewise applicable. In these instances, a "continuity of interest" by the former shareholders in the new corporate enterprise has been held to defeat concurrent application of taxpayer-favoring liquidating provisions.

In all of these instances, however, the former shareholders (unlike those before us) retained a substantial continuing interest in the reorganized corporate enterprise, at least fifty percent or more. The essential reason for denying liquidation benefits—either section 337 non-recognition treatment of a sale made during the liquidation or capital gains treatment to a liquidating distribution—was that substantially the same business was being conducted by the new corporate entity owned by substantially the same shareholders. The liquidation was only a device in connection with a "mere shifting of charters," *Helvering v. Elkhorn Coal Co.*, 95 F.2d 732, 734 (4th Cir. 1938), by which to avoid tax consequences on corporate sales or distributions that were fully taxable if made by the original corporation before its transmutation into the new corporate entity carrying on substantially the same business with substantially the same shareholders.

In the present case, however, the taxpayers' former 100% stock ownership of Olivier was transformed by the "C" reorganization into a 0.6% interest in the outstanding shares of USI, and Olivier itself was completely liquidated as a corporate entity. The sale of assets to third persons during the plan of liquidation was primarily for the purpose of satisfying Olivier's corporate liabilities prior to its complete liquidation; it qualifies for nonrecognition treatment un-

der the literal terms of section 337 in accordance with the apparent Congressional intent. Unlike the decisions relied upon by the government, the liquidation in this case was not utilized in connection with a mere shifting of corporate charters in order to avoid taxes otherwise due; instead, Olivier was completely liquidated in connection with its "C" reorganization recognized by the I.R.C. (see note 11, *supra*). Olivier is entitled to section 337 non-recognition treatment as well as to application of the reorganization provisions, because both apply to it under the express terms of the I.R.C. provisions enacted by Congress and both may apply without detriment to any tax policy or provision enunciated by the I.R.C. as a whole.

The government concedes that there was sufficient "continuity of interest" to justify reorganization treatment. *See* Bittker & Eustice, ¶¶ 14.11, 14.51. The government contends, however, that this continuity of interest prevents our holding that Olivier's liquidation was "complete." In addition to relying upon *FEC Liquidating Corporation*, which we (like the trial court) think incorrectly applied the decisions discussed above, the government (as did the *FEC* court) relies upon dicta in *Pridemark, Inc. v. Commissioner*, 345 F.2d 35 (4th Cir. 1965). There, capital gains liquidation treatment *was* allowed where there was a complete transfer of assets and cessation of business by the liquidated corporation. However, the court also added that, for liquidation benefits to be applicable, "[t]he corporation must have ceased to be a going corporate concern, or *if the enterprise is continued in corporate form, the shareholder must have disassociated himself from it.*" Id. at 345 F.2d 41 (italics ours).

■ The jurisprudence does not support this dicta that, in order for a dissolved corporation and its shareholders to be accorded liquidation treatment, there must be a complete disassociation of its former stockholders from the new corporate entity.

sioner, 63 T.C. 423 (1974), *aff'd without pub. op.*, 39 A.F.T.R.2d 786 (4th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *Wilson v. Commissioner*, 46 T.C. 334 (1966); *James Armour, Inc. v. Commissioner*, 43 T.C. 295 (1964).

The Second and Ninth Circuits have held that where there is a bona fide liquidation for a valid business purpose, in connection with a corporate reorganization that results in a significant shift of control and lessening of the former shareholder's interest in the new corporate enterprise, the mere "continuity of interest" of the former shareholder in the new corporate enterprise does not preclude the application of the liquidation benefits available to the liquidated corporation and its shareholders under sections 331 and 337, in accordance with their statutory language and the apparent Congressional intent. *Breech v. United States*, 439 F.2d 409 (9th Cir. 1971) (20% continuing interest of former shareholder); *Commissioner v. Berghash*, 361 F.2d 257 (2d Cir. 1966) (50% continuing interest of former shareholders).[13]

B. *The I.R.C. itself recognizes that liquidation and reorganization provisions may concurrently apply*

■ We have thus found no jurisprudential basis for the government's contention that taxpayer-favoring reorganization and liquidation provisions may never concurrently apply to a liquidation occurring as part of a "C" reorganization. We are reinforced in our conclusion by the circumstance that the I.R.C. itself recognizes that a liquidation tax advantage may be accorded a corporation that liquidates pursuant to a reorganization. The district court pointed out, for instance, that section 336 (a liquidation provision providing that "no gain or loss shall be recognized to a corporation on

the distribution of property in partial or complete liquidation") applies to a liquidation made pursuant to a reorganization.[14] It has also been noted that section 332 (a liquidation provision recognizing no gain or loss by a parent corporation receiving property distributed in the liquidation of a subsidiary) may apply to parent-subsidiary mergers in some instances, where the combination is treated both as a complete liquidation and as a reorganization.[15]

*Summary*

■ In the context of a bona fide liquidation in conjunction with a "C" reorganization, we are unable to accept the government's argument that the liquidation and reorganization provisions of the I.R.C. are so conceptually incompatible as to prevent the application of a liquidation provision in the absence of conflict with any reorganization provision. In affirming the district court's holding to this effect, we thus conclude that section 337, precluding recognition of gain or loss at the corporate level from sales of assets during an I.R.C.-recognized liquidation, may apply as to sales made to third persons by a corporation pursuant to plans of both liquidation and I.R.C.-recognized "C" reorganization under section 368(a)(1)(C).

The remaining issues (II and III) concern the shareholder-level tax liability of the stockholders of Olivier, who received distributions from the corporation in the process of the liquidation-reorganization.

**13.** Austin, *supra* note 10, at 638, 640, states that the Internal Revenue Service itself apparently accepts the fact that if the shareholders of the liquidated corporation own less than twenty percent of the stock of the acquiring corporation, there is little potential for the liquidation-reincorporation type of plan to be used to distort the I.R.C. tax scheme. Rev. Proc. 72–9, 1972–1.B.718, 719, is cited as providing that the Service will not issue advance rulings regarding section 337's application "where more than a nominal amount of the stock (that is, more than twenty percent in value) of both the selling corporation and the purchasing corporation are owned by the same persons."

**14.** For a more complete discussion, see Bittker & Eustice, at 14–103 n. 274; and Austin, supra note 10, at 664.

In this court, the government argues that section 336 could not be an applicable nonrecognition provision in a liquidation pursuant to a reorganization, since it was first enacted in the 1954 Code while the reorganization provisions originated in the 1921 Revenue Act. The argument overlooks the fact that the rule of section 336 was applied under the 1921 Act and the 1939 Code. See Treas.Reg. 62, art. 548 (1921) and Treas.Reg. 103, § 19.22(a)21 (1939).

**15.** Austin, *supra* note 10, at 645, citing decisions and an Internal Revenue Service ruling.

## II.

■ The government alternatively contends that if we *do* permit section 337 to apply so as to accord nonrecognition treatment to the gain obtained by Olivier itself from the sale made during its liquidation, then correlatively we should treat distributions received by the shareholders according to the liquidation rule provided by section 331(a)(1): "Amounts [received] in complete liquidation of a corporation shall be treated as . . . full payment . . . for the stock." Thus, there would be immediate recognition and taxation, at long-term capital gain rates, of the gain "realized" by the taxpayers,[16] Plantation and Sellers, as of the time of the liquidation. Bittker & Eustice, ¶ 11.03.

However, if the reorganization provisions do concurrently apply, no immediate gain or loss at the shareholder level is recognized at the time of the distribution of the USI stock that was received in exchange for Olivier's stock pursuant to the plan of reorganization, section 354[17]; however, the cash "boot" received is taxable (see part III, *infra* ) either as a capital gain (as the taxpayer contends, under section 356(a)(1)(B)), or, if it has "the effect of the distribution of a dividend," then it is taxable (as the government contends, under section 356(a)(2)) as ordinary income.

The government argues that the distribution of USI stock to Olivier's stockholders pursuant to Olivier's plan of liquidation must be *either* a liquidation distribution under section 331(a) (with consequent immediate recognition of gain) *or* else a reorganization distribution under sections 354 and 356 (with continued adjusted basis for the USI stock and no immediate tax-consequence as to its receipt, as held by the district court). Essentially arguing that we must treat the Olivier transactions as part of either a liquidation *or* a reorganization,

the government contends that if liquidation section 337 applies so as to accord nonrecognition of gain at the *corporate* level, then in order to complement the legislative scheme we must accord immediate recognition under liquidation section 331(a) of shareholder gain resulting from this liquidating distribution.

In part I of this opinion we rejected the government's basic argument that, because of conceptual incompatibility, the liquidation and reorganization provisions cannot concurrently apply to a liquidation "C" reorganization. We there held that a liquidation provision may apply to a bona fide liquidation made pursuant to plan of "C" reorganization, unless the liquidation provision is in conflict with a reorganization provision. We find no such conflict here.

With regard to the government's contention that by statutory implication section 331 requires immediate recognition of gain upon a liquidating distribution (i. e., if the transactions be considered a liquidation for purposes of section 337), the district court correctly held at 78-2 U.S.T.C. # 9693 at 85,339-40:

Section 331(a)(1) provides as follows:
(a) *General Rule*
(1) *Complete liquidations.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.

This provision says nothing about the *recognition* of gain upon the liquidation of a corporation. It simply states that the liquidating distribution shall be treated as payment in exchange for the stock. The legislative creation of an "exchange" has great bearing in the determination of the *character* of any gain or loss which is recognized since it fulfills one of the requirements for long term capital gain characterization (Section 1222(3)), however, the *recognition* of gain or loss is

---

16. The gain realized was the excess of the fair market value of the USI stock received by the Olivier shareholders over the basis for the Olivier stock surrendered upon Olivier's liquidation. Bittker & Eustice, ¶ 11.03.

17. In general, the adjusted basis for the stock exchanged continues as the basis for the stock received, and the gain or loss that went unrecognized at the time of the liquidation will be recognized when (and if) the shareholder liquidates his investment. Bittker & Eustice, ¶ 14.-01.

provided for elsewhere in the Code. Section 1001(c) provides that "in the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under Section 1002". Section 1002 states that "*Except as otherwise provided in this subtitle*, on the sale or exchange of property the entire amount of the gain or loss, determined under Section 1001, shall be recognized". (emphasis added)

Section 354 of the Code is one of those provisions which provides otherwise. It provides that "*No gain or loss shall be recognized* if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization". Section 354(a)(1), Internal Revenue Code of 1954. Section 356 modifies this provision by providing that some or all of the gain may be "recognized" if certain unqualified property commonly referred to as "boot" is received in the exchange. Thus, where a corporation is liquidated as part of a plan of reorganization, these specific statutory provisions control the "recognition" of any gain or loss realized on the "exchange".

The initial illusion of avoidance created by these "non-recognition" provisions is dispelled by Section 358(a)(1) which provides that the basis of the USI stock received will, with minor adjustments, be the same as the basis of the Olivier stock given up. This provision thus preserves the gain and it will be recognized when the new stock is finally sold.[18]

We thus affirm the district court's holding that the Olivier shareholders are entitled not to recognize their gain from the distribution of the USI stock in exchange for their Olivier stock pursuant to Olivier's plan of "C" reorganization under section 368(a)(1)(C).

III.

The final issue concerns tax liability at the shareholder level for the cash "boot" received by Olivier's stockholders. This "boot" was in addition to the USI stock distributed to them pursuant to the plan of "C" reorganization. (By this plan, as noted, Olivier had exchanged all of its assets for USI stock, sold sufficient USI stock to pay its liabilities, and then distributed to its shareholders the remaining USI stock and the surplus cash. See notes 2 and 3, *supra*.) In part II of this opinion we noted that the shareholder tax consequences as to the USI stock received are governed by section 354 (reorganization) rather than section 331 (liquidation). For similar reasons, as to the cash boot the shareholders' tax liability is governed by section 356 of the reorganization provisions rather than section 331 of the liquidation provisions.

With regard to property distributed to shareholders pursuant to a plan of reorganization, section 356 [19] essentially provides

---

18. The government does not now urge an argument rejected by the district court: that section 331 immediate recognition of shareholder gain is also implicitly required through consideration of the legislative history of section 337. The merits and fallacy of that argument are discussed in Austin, *supra* note 10, at 646–50. *Cf.*, for legislative history of section 337, *Central Tablet Manufacturing Company v. United States*, 417 U.S. 673, 678–83, 94 S.Ct. 2516, 2520–22, 41 L.Ed.2d 398 (1974).

19. Section 356(a) provides:
(a) *Gain on Exchanges.—*
(1) *Recognition of Gain.—*If—
(A) section 354 or 355 would apply to an exchange but for the fact that

(B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.
(2) *Treatment as Dividend.—*If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall

that the gain will be recognized at the time of distribution,[20] unless it "has the effect of the distribution of a dividend"—in which event it is in general subject to tax upon receipt at ordinary tax rates. Bittker & Eustice, ¶ 14.34. In the instant case, the issue is whether the case received by Olivier's stockholders, Plantation ($65,336.50) and Sellers ($32,667.76), is taxable under section 356(a)(1) at long-term capital gain rates, as received in exchange for the Olivier stock surrendered, or is instead taxable at ordinary income rates as having "the effect of the distribution of a dividend."

The district court, following *Wright v. United States*, 482 F.2d 600 (8th Cir. 1973), held that the cash boot received was equivalent to money paid for the stock, so that "the net effect of the transaction was a sale by . . . Olivier stockholders of their Olivier stock to USI for USI stock and cash." The *Wright* test was based on whether there was a meaningful reduction in the nature of the shareholders' interest in the continuing corporate business. Here, if the *Wright* test were applicable, we would be concerned with a reduction from a 66⅔% and 33⅓% interest in Olivier stock for Plantation and Sellers respectively to a 0.4% and 0.2% respective interest in the outstanding USI stock.

▮ Subsequent to the district court decision, however, this court distinguished the *Wright* case. In *Shimberg v. United States*, 577 F.2d 283 (5th Cir. 1978), we held that *Wright's* "meaningful reduction" test should not apply where, as here, the "boot" paid would have been taxed as a dividend if made prior to the reorganization. Since at the time of this distribution Olivier's accumulated earnings and profits exceeded the

cash distributed to Olivier's stockholders, under *Shimberg* the cash "boot" so distributed to them had "the effect of the distribution of a dividend," section 356(a)(2) (see also section 316(a)), and was thus includable in gross income, section 301(c).

In the case of the present plaintiff taxpayer, Plantation,[21] the government concedes that no additional tax is due because of a deduction to which Plantation would have been entitled had the cash distribution been treated as dividend income.[22]

*Conclusion*

The district court correctly decided the issues addressed in parts I and II of this opinion. Although a subsequent decision by this court eroded the basis for the trial court's conclusion as to the issue addressed in part III, with regard to the present taxpayer, the net amount of the refund awarded is not changed. AFFIRMED.

---

be treated as gain from the exchange of property.

**20.** However, as to stock or securities in corporations that are parties to the reorganization, nonrecognition under section 354 applies. See part II, *supra*. Section 356(a), note 18, *supra*, specifically excepts from its recognition rule those distributions to which section 354 applies.

**21.** Plantation is technically the only party to this particular appeal. See notes 5–7, *supra*, and *Sellers v. United States*, 615 F.2d 1066.

**22.** Government's Reply Brief, pp. 5–6. Plantation paid tax on the cash distribution on a capital gains basis. This was in excess of the amount of its tax liability if the distribution had been treated as dividend income, we are told, because if so characterized Plantation would have been entitled to claim an 85% deduction for inter-corporate dividends under section 243.